UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RYAN NOAH SHAPIRO, )
)
)
PLAINTIFF ) Judge _____
vs. ) Civil Action No. _____
)
)
CENTRAL INTELLIGENCE AGENCY, )
)
)
DEFENDANT )
)
_____)

# **EXHIBIT 1**

12/11/13

**Freedom of Information and Privacy Acts request:**

To: Information and Privacy Coordinator
Central Intelligence Agency
Washington, DC 20505

This is a request for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and the Privacy Act, 5 U.S.C. § 552a. This request should be considered under both statutes to maximize the release of records.

Further, please note that this request seeks expedited processing pursuant to 32 C.F.R. 1900.34(c)(2) because there is a "compelling need" for the records.

REQUESTER INFORMATION

**Name:** Ryan Noah Shapiro
**Affiliation:** Doctoral Candidate, Massachusetts Institute of Technology
**Address:** 12 James Way
Cambridge, MA   02141
**Email:** ryannoah@mit.edu
**Phone:** 301-602-3063
**Purpose of Request:** Scholarly research/Public dissemination of analysis of requested disclosure.

RECORDS SOUGHT

I request disclosure of any and all records that were prepared, received, transmitted, collected and/or maintained by the Central Intelligence Agency (CIA) mentioning the deceased individual *Rolihlahla Mandela, (aka Nelson Mandela, aka Madiba, aka Tata)*.

Date of Birth: **18 July 1918**
Place of Birth: **South Africa**
Date of Death: **5 Dec. 2013**
Place of Death: **South Africa**

1

ADDITIONAL DESCRIPTIVE INFORMATION

The following information about Nelson Mandela is provided in order to enable the CIA to locate the requested records. It is not intended to limit the scope of this request.

Nelson Mandela was a South African anti-apartheid revolutionary, politician, and philanthropist who served as President of South Africa from 1994 to 1999. He was the first black South African to hold the office, and the first elected in a fully representative democratic election. His government focused on dismantling the legacy of apartheid through tackling institutionalized racism, poverty and inequality, and fostering racial reconciliation. Politically an African nationalist and democratic socialist, he served as President of the African National Congress (ANC) from 1991 to 1997. Internationally, Mandela was Secretary General of the Non-Aligned Movement from 1998 to 1999. He was also an outspoken opponent of the U.S. invasion of Iraq. Among numerous other awards, Mandela was the recipient of the Nobel Peace Prize, the U.S. Presidential Medal of Freedom, and the Soviet Order of Lenin.

Mandela served over 27 years in prison in South Africa for his political and revolutionary activities. The CIA was reportedly involved in Mandela's 1962 arrest that led to his decades-long incarceration. Mandela was finally released from prison in 1990. Mandela was denounced by his critics, including numerous leading U.S. conservative politicians and pundits, as a Marxist terrorist. Mandela was officially designated as a terrorist by the United States government until 2008, when Congress finally moved to have Mandela removed from the U.S. terror watch list.

I have attached a printout of Wikipedia's entry for "Nelson Mandela[1]," a printout of the *New York Times* 5 Dec. 2013 obituary for Mandela, a printout of Yahoo News' 6 Dec. 2013 article, "Mandela, the man once branded a 'terrorist' by the US," a printout of Will Potter's 10 Dec. 2013 article on GreenIsTheNewRed.com, "How Nelson Mandela Went From Being 'Terrorist' to Nobel Peace Prize Winner," and a printout of Jeff Stein's 5 Dec. 2013 article in *Newsweek*, "The Day Mandela Was Arrested, With a Little Help From the CIA," as formal elements of this request. Please incorporate these materials when crafting searches in response to this request.

REQUEST FOR EXPEDITED PROCESSING

Under 32 C.F.R. 1900.34(c)(2), a "compelling need" is deemed to exist "[w]hen the request is made by a person primarily engaged in disseminating information and the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity."

I am seeking expedited treatment for this request.

---

[1] As viewed on 9 Dec. 2013.

2

1. *The records are urgently needed.*

The requested records involve a breaking news story of general public interest. Countless publications have shown an interest in Mandela, his recent death, and the role of the CIA and American government in the incarceration and marginalization of Mandela. Reports on the subject have appeared in a wide variety of news outlets including the *New York Times*, the *Los Angeles Times*, the *Washington Post*, *Newsweek*, and many other major publications. A Google search[2] for "Nelson Mandela" brings up 62,700,000 hits on the search engine with many articles published as recently as today.

As demonstrated by the articles referenced and attached in the previous section, there has been widespread questioning of the federal government's activities. Because of the CIA and broader American government's roles in Mandela's arrest, incarceration, and subsequent marginalization, the records requested are of general public interest.

2. *I am primarily engaged in disseminating information to inform the public about the federal government's activities.*

I am an ABD doctoral candidate in good standing at the Massachusetts Institute of Technology. I am in the PhD program in History, Anthropology, and Science, Technology, & Society (HASTS) in MIT's Department of Science, Technology, & Society. My research includes exploration of conflicts at the intersections of national security, law enforcement, surveillance, open government, and political dissent. I am a person primarily engaged in analyzing and disseminating information. To date, I have been invited to present, and have presented, scholarly lectures and talks pertaining to issues at the nexus of national security, social movements, and open government at institutions including the Massachusetts Institute of Technology, the National Institutes of Health, the Kennedy School of Government at Harvard University, the Max Planck Institute for the History of Science (Berlin), the University of California, Santa Barbara, the National Press Club, the conference of the National Lawyers Guild, the History of Science Society, the Society for the Social History of Medicine, the Conference on Policy History, the American Society for Environmental History, University College Cork (Ireland), and Suffolk University Law School. Additionally, I was asked to, and did, co-curate an historical exhibit at NIH on a related topic. The exhibit was held at the History of Medicine Division of the National Library of Medicine at NIH, and I co-curated the exhibit with the Deputy Chief of the History of Medicine Division of the National Library of Medicine.

Among other media outlets, my scholarly research and related commentary on these issues have been featured in *The Washington Post*, *The Los Angeles Times*, *Mother Jones*, *The International Business Times*, *Salon*, NPR, *Huffington Post*, HuffPost Live, *The Daily Beast*, *The Hollywood Reporter*, *The Public Record*, *Fox Nation*, *MSN News*, *Truth-Out*, *Green Is the New Red*, *Boing Boing*, *The Verge*, *Tech Dirt*, and *Al Jazeera America*. Much of this coverage has

---

[2] Performed on 9 Dec. 2013.

included the publication of documents released to me through FOIA requests, as well as my analysis of those documents or related issues.
Further, I am currently collaborating with *Al Jazeera America* journalist and author Jason Leopold on popular articles pertaining to issues of open government, the policing of dissent, and national security.

3. *Certification pursuant to 32 C.F.R. 1900.34(c)*

I certify the foregoing to be true and correct to the best of my knowledge and belief, and that a compelling need exists for the requested records.

 \_/s/ RNS_____
Ryan Shapiro


### INSTRUCTIONS REGARDING SEARCH

1.   *Instructions Regarding "Leads":*

As required by the relevant case law, the CIA should follow any leads it discovers during the conduct of its searches and perform additional searches when said leads indicate that records may be located in another system.  Failure to follow clear leads is a violation of FOIA.


2.   *Request for Public Records:*

Please search for any records even if they are already publicly available.


3.   *Request for Electronic and Paper/Manual Searches:*

I request that searches of all electronic and paper/manual indices, filing systems, and locations for any and all records relating or referring to the subject of my request be conducted.  I further request that the CIA conduct a search of its "soft files."


4.   *Request for Search of Filing Systems, Indices, and Locations:*

I request that the CIA conduct a search of all of its directorates.  Specifically, I request that the search conducted by the CIA include, but not be limited to, the following filing systems, indices, and locations: Training Records; Center for the Study of Intelligence (CSI) Records; CIA Declassifications Center (CDC) External Liaison Records; Manuscript Review Records;

4

Security Operations Records; Information Release Records; Official Personnel Files; Personnel Security Records; Polygraph Records; Office of the Director Action Center Records; Office of General Counsel Records; Congressional Liaison Records; Public Affairs Records; Inspector General Research Records; Inspector General Investigation and Interview Records; Office of the Deputy Director of Central Intelligence (DDCI) for Community Management Records; Directorate of Science & Technology (DS&T) Private Sector Contact Information; Alumni Communications Records; Directorate of Operations Records; Academic and Business Contact Records; Customer Relations Records; Research System Records; Intelligence Analysis Records; Guest Speaker Records; National Intelligence Council (NIC) Records; Arms Control Records; CREST; employees' official files; CIA's daily diary of its activity; and monthly progress reports.

Additionally, please search *all* of your indices, filing systems, and locations, including those I have not specified by name and those of which I may not be aware.

5.   *Request regarding Photographs and other Visual Materials:*

I request that any photographs or other visual materials responsive to my request be released to me in their original or comparable forms, quality, and resolution. For example, if a photograph was taken digitally, or if the CIA maintains a photograph digitally, I request disclosure of the original digital image file, not a reduced resolution version of that image file nor a printout and scan of that image file. Likewise, if a photograph was originally taken as a color photograph, I request disclosure of that photograph as a color image, not a black and white image. Please contact me for any clarification on this point.

6.   *Request for Duplicate Pages:*

I request disclosure of any and all supposedly "duplicate" pages. Scholars analyze records not only for the information available on any given page, but also for the relationships between that information and information on pages surrounding it. As such, though certain pages may have been previously released to me, the existence of those pages within new context renders them functionally new pages. As such, the only way to properly analyze released information is to analyze that information within its proper context. Therefore, I request disclosure of all "duplicate" pages.

7.   *Request for Search of Operational Files:*

I request that in conducting its search, the CIA include "operational files," as that term is defined in 50 U.S.C. § 431(b).

8.   *Request to Search Emails:*

5

Please search for emails relating to the subject matter of my request.

9.  *Request for Search of Records Transferred to Other Agencies:*

I request that in conducting its search, the CIA disclose releasable records even if they are available publicly through other sources outside the CIA, such as NARA.

10. *Regarding Destroyed Records*

If any records responsive or potentially responsive to my request have been destroyed, my request include, but is not limited to, any and all records relating or referring to the destruction of those records. This includes, but is not limited to, any and all records relating or referring to the events leading to the destruction of those records.

### INSTRUCTIONS REGARDING SCOPE AND BREADTH OF REQUESTS

Please interpret the scope of this request broadly. The CIA is instructed to interpret the scope of this request in the most liberal manner possible short of an interpretation that would lead to a conclusion that the request does not reasonably describe the records sought.

### EXEMPTIONS AND SEGREGABILITY

I call your attention to President Obama's 21 January 2009 Memorandum concerning the Freedom of Information Act, in which he states:

> All agencies should adopt a presumption in favor of disclosure, in order to renew their commitment to the principles embodied in FOIA [....] The presumption of disclosure should be applied to all decisions involving FOIA.[3]

In the same Memorandum, President Obama added that government information should not be kept confidential "merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears."

---

[3] President Barack Obama, "Memorandum for the Heads of Executive Departments and Agencies, Subject: Freedom of Information Act," 21 January 2009;
<http://www.whitehouse.gov/the_press_office/FreedomofInformationAct/.>

Finally, President Obama ordered that "The Freedom of Information Act should be administered with a clear presumption: In the case of doubt, openness prevails."

Nonetheless, if any responsive record or portion thereof is claimed to be exempt from production, FOIA/PA statutes provide that even if some of the requested material is properly exempt from mandatory disclosure, all segregable portions must be released. If documents are denied in part or in whole, please specify which exemption(s) is (are) claimed for each passage or whole document denied. Please provide a complete itemized inventory and a detailed factual justification of total or partial denial of documents. Specify the number of pages in each document and the total number of pages pertaining to this request. For "classified" material denied, please include the following information: the classification (confidential, secret or top secret); identity of the classifier; date or event for automatic declassification or classification review or downgrading; if applicable, identity of official authorizing extension of automatic declassification or review past six years; and, if applicable, the reason for extended classification beyond six years.

In excising material, please "black out" the material rather than "white out" or "cut out." I expect, as provided by FOIA, that the remaining non-exempt portions of documents will be released.

Please release all pages regardless of the extent of excising, even if all that remains are the stationery headings or administrative markings.

In addition, I ask that your agency exercise its discretion to release records which may be technically exempt, but where withholding serves no important public interest.

### ADDITIONAL INSTRUCTIONS REGARDING REQUEST

Please produce all records with administrative markings and pagination included.

Please send a memo (copy to me) to the appropriate units in your office to assure that no records related to this request are destroyed. Please advise of any destruction of records and include the date of and authority for such destruction.

### FORMAT

I request that any releases stemming from this request be provided to me in digital format (soft-copy) on a compact disk or other like media.

### FEE CATEGORY AND REQUEST FOR A FEE WAIVER

I am willing to pay any reasonable expenses associated with this request, however, as the purpose of the requested disclosure is in full conformity with the statutory requirements for a waiver of fees, I formally request such a waiver. I request a waiver of all costs pursuant to

5 U.S.C. §552(a)(4)(A)(iii) ("Documents shall be furnished without any charge ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). Disclosure in this case meets the statutory criteria, and a fee waiver would fulfill Congress's legislative intent in amending FOIA. See *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'"). I incorporate by reference the explanation and attached materials in the above sections which demonstrates why the requested information is in the public interest.

DoD 5400.7-R C6.1.4.1 provides that "documents shall be furnished without charge, or at a charge reduced below fees assessed to the categories of requesters in subsection C6.1.5., below, when the Component determines that waiver or reduction of the fees is in the public interest because furnishing the information is likely to contribute significantly to public understanding of the operations or activities of the Department of Defense and is not primarily in the commercial interest of the requester."

Should my request for a fee waiver be denied, I request that I be categorized as a member of the news media for fee purposes pursuant to DoD 5400.7-R C6.1.5.7. According to 5 U.S.C. § 552(a)(4)(A)(ii), which codified the ruling of Nat'l Security Archive v. Dep't of Defense, 880 F.2d 1381 (D.C. Cir. 1989), the term "a representative of the news media" means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience. This is consistent with the definition provided in DoD 5400.7-R C6.1.5.7.1.

As the legislative history of FOIA reveals, "It is critical that the phrase 'representative of the news media' be broadly interpreted if the act is to work as expected. . . . In fact, any person or organization which regularly publishes or disseminates information to the public . . . should qualify for waivers as a 'representative of the news media.'" 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986) (emphasis in original quotation); and 2) "A request by a reporter or other person affiliated with a newspaper, magazine, television or radio station, or other entity that is in the business of publishing or otherwise disseminating information to the public qualifies under this provision." 132 Cong. Rec. H9463 (Oct. 8, 1986) (emphasis in original quotation)). Therefore, in accordance with the Freedom of Information Act and relevant case law, I, Ryan Shapiro, should be considered a representative of the news media.

The Department of Justice provides a two-part test for determining whether a requestor is entitled to a waiver of fees. Records responsive to a request are to be furnished without charge if the requestor has demonstrated that "(i) Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and (ii) Disclosure of the information is

8

not primarily in the commercial interest of the requestor." 28 CFR 16.11(k). The DOJ regulations further require the consideration of the following factors in determining whether the requestor has met the first part of the test: the subject of the request; the informative value of the information to be disclosed; the contribution to an understanding of the subject by the public likely to result from disclosure; and the significance of the contribution to public understanding. 28 CFR 16.11(k)(2). To determine whether the second part of the test is met, the DOJ regulations require consideration of the following factors: the existence and magnitude of a commercial interest; and the primary interest in disclosure. As explained below, my request clearly meets this two-part test, and is also the type of request, and I am the type of requestor, for which courts have held that waiver of fees is required under FOIA.

1. DISCLOSURE OF THE REQUESTED RECORDS IS IN THE PUBLIC INTEREST BECAUSE IT IS LIKELY TO CONTRIBUTE SIGNIFICANTLY TO THE PUBLIC UNDERSTANDING OF THE OPERATIONS AND ACTIVITIES OF THE GOVERNMENT.

A. The subject of the requested records concerns the operations and activities of the CIA and broader government. The subject of the requested records concerns identifiable operations and activities of the CIA and broader government, such as: CIA involvement in surveillance of Mandela; CIA provision of intelligence regarding Mandela to the South African apartheid regime; CIA assistance in the arrest and prosecution of Mandela; possible CIA monitoring of Mandela's incarceration; the U.S. and CIA's broader efforts to surveil and subvert the South African anti-apartheid movement; the CIA's possible surveillance of Mandela after his release from prison; the CIA's possible continued provision of intelligence regarding Mandela to the apartheid regime; possible CIA provision of intelligence regarding Mandela and the anti-apartheid movement to American politicians and policy makers; possible CIA surveillance of anti-apartheid activists and sympathizers in the United States; possible CIA surveillance of anti-war activists and sympathizers in the United States; and the U.S. designation of Mandela and his organization as a terrorist threat.

B. The disclosure is likely to contribute to an understanding of government operations and activities because the disclosable portions of the requested records will be meaningfully informative about those operations and activities. The vast majority of disclosable information is not already in the public domain, in either a duplicative or a substantially identical form, and therefore the disclosure would add substantial new information to the public's understanding of issues including but not limited to: CIA involvement in surveillance of Mandela; CIA provision of intelligence regarding Mandela to the South African apartheid regime; CIA assistance in the arrest and prosecution of Mandela; possible CIA monitoring of Mandela's incarceration; the U.S. and CIA's broader efforts to surveil and subvert the South African anti-apartheid movement; the CIA's possible surveillance of Mandela after his release from prison; the CIA's possible continued provision of intelligence regarding Mandela to the apartheid regime; possible CIA provision of intelligence regarding Mandela and the anti-apartheid movement to American politicians and policy makers; possible CIA surveillance of anti-apartheid activists and sympathizers in the United States; possible CIA surveillance of

9

anti-war activists and sympathizers in the United States; and the U.S. designation of Mandela and his organization as a terrorist threat.

The overwhelming preponderance of records I need to conduct my study are in the possession of the CIA and not in the public domain.

C. The disclosure of the requested records will contribute to the increased understanding of a broad audience of persons interested in the subject, rather than merely my own individual understanding. Further, I will be collaborating with professionals who have great expertise in the subject area, and I have the ability and intention to effectively convey information to the public.

As explained herein in more detail, the audience likely to be interested in the subject is broad, and includes, historians of modern American government, politics, culture, and national security; journalists reporting on American politics, government, national security, and society; civil liberties attorneys; and the general public.

i) I firmly intend to analyze the requested records in order to facilitate significant expansion of public understanding of government operations. I am well qualified to perform this analysis.

I am an ABD doctoral candidate in good standing at the Massachusetts Institute of Technology. I am in my seventh year of the PhD program in History, Anthropology, and Science, Technology, & Society (HASTS) in MIT's Department of Science, Technology, & Society. My research explores conflicts at the intersections of national security, law enforcement, surveillance, open government, and political dissent. A major thread of my research involves exploration of the national security and political functioning of "terrorism" designations, especially as they relate to civil liberties and political dissent.

I have deep research and analytical experience in a broad range of pertinent scholarly disciplines and methodologies. Prior to my current position at MIT, I served as research assistant for the Deputy Chief of the History of Medicine Division of the National Library of Medicine at the National Institutes of Health (NIH) in Bethesda, MD, and also as the Assistant Director of Research for the Nuclear Studies Institute at American University in Washington, DC.

I am extensively trained in Modern American History. I hold an MA in Modern American History from American University, where I passed my MA qualifying exam in "Modern American History" with distinction. Additionally, at MIT, one of my three PhD qualifying exam fields in the HASTS doctoral program was "War, Science, & Society in 20th century American History." I have taught, lectured on, and assisted with teaching courses in Modern American History at the Massachusetts Institute of Technology, American University, and the University of California, Santa Barbara. For one example among many, in the Spring 2012 semester, I was the instructor for MIT's course, *American History since 1865* (21H.102).

I am also extensively trained in the fields of History of Science, the History of Medicine, Animal Studies, and Science, Technology, & Society. I have lectured and assisted with teaching courses on environmental history, scientific and ethical conflicts involving national security in the United States, bioethics, open government, and political dissent and the state. I have particularly extensive training and expertise in the history of American social movements, political dissent and repression in the United States, controversies over freedom of information and open government in the United States, and controversies at the intersections of the above and American national security.

I have significant experience researching and analyzing large volumes of documents obtained through the Freedom of Information Act, including tens of thousands of pages released to me by the FBI, the ATF, NIH, USDA, the Department of the Army, the Department of Defense, the Unites States Coast Guard, and the National Archives and Records Administration.

My scholarly research has been funded by a host of elite academic and research institutions. These institutions include the Massachusetts Institute of Technology, where I was granted a Presidential Fellowship, as well as the University of California, American University, the Mellon Fund, and the Social Sciences Research Council.

Further, I am fortunate to have earned the full scholarly faith of, and benefit of close training with, some of the most esteemed academic researchers in their respective fields in the country. My primary advisor is Harriet Ritvo. Dr. Ritvo earned her PhD from Harvard University and is now the Arthur J. Conner Professor of History at MIT, the past Chair of the History Faculty at MIT, and the current Director of Graduate Studies of MIT's Program in History, Anthropology, and Science, Technology, & Society.

My key secondary advisors include David Jones. Dr. Jones is the A. Bernard Ackerman Professor of the Culture of Medicine at Harvard University with a joint appointment in Harvard's Department of the History of Science and the Harvard School of Medicine. Dr. Jones earned his PhD in the History of Science from Harvard University and earned his M.D. from Harvard Medical School. Dr. Jones is also a practicing psychiatrist at the prestigious Massachusetts General Hospital. Dr. Jones' research includes work on race, medicine, and secret U.S. government operations conducted in the name of national security.

My key secondary advisors also include David Kaiser. Dr. Kaiser is the Germeshausen Professor of the History of Science at MIT, the head of MIT's Department of Science, Technology, & Society, and a Senior Lecturer in MIT's Department of Physics. Dr. Kaiser earned his PhD in the History of Science from Harvard University as well as a second PhD in Physics from Harvard University. Dr. Kaiser's research specialties include the history of state repression of political dissent in the United States.

My key secondary advisors also include Christopher Capozzola. Dr. Capozzola is professor of Modern American History at the Massachusetts Institute of Technology. Dr. Capozzola earned his PhD in Modern American History from Columbia University and his research specialties

also include the history of state repression of political dissent and social movements in the United States.

Finally, my key secondary advisors also include Theodore Postol. Dr. Postol is professor of Science, Technology, & National Security at the Massachusetts Institute of Technology, and a Senior Research Associate at Stanford University's Center for International Security and Arms Control. Prior to his professorship, Dr. Postol earned his PhD in Nuclear Engineering at MIT, worked as a research physicist at Argonne National Laboratory, worked as an analyst at the Congressional Office of Technology Assessment, and served at the Pentagon as scientific advisor to the Chief of Naval Operations. Dr. Postol's research includes work on the political functioning of national security.


In addition to my demonstrated ability to analyze the requested release in order to provide significant expansion of public knowledge of government operations, I also have the ability and firm intent to disseminate this significant expansion of public knowledge of government operations both within and outside of academia. I will disseminate this significant expansion of public knowledge of government operations through the production of scholarly and popular articles, scholarly books, scholarly and popular lectures, scholarly and popular exhibits, provision of documents and expert analysis to journalists, and collaborations with journalists. Among other outlets, I intend to distribute my analysis of the requested records to the same or similar entities as I have in the past.

To date, I have been invited to present, and have presented, scholarly lectures and talks pertaining to issues at the nexus of American national security, American social movements, and transparency and open government in the United States at institutions including the Massachusetts Institute of Technology, the National Institutes of Health, the Kennedy School of Government at Harvard University, the Max Planck Institute for the History of Science (Berlin), the University of California, Santa Barbara, the National Press Club, the conference of the National Lawyers Guild, the History of Science Society, the Society for the Social History of Medicine, the Conference on Policy History, the American Society for Environmental History, University College Cork (Ireland), and Suffolk University Law School.

Additionally, I was asked to, and did, co-curate an historical exhibit at NIH on a related topic. The exhibit was held at the History of Medicine Division of the National Library of Medicine at NIH, and I co-curated the exhibit with the Deputy Chief of the History of Medicine Division of the National Library of Medicine.

Among other media outlets, my scholarly research and related commentary on these issues have been featured in *The Washington Post*, *The Los Angeles Times*, *Mother Jones*, *The International Business Times*, *Salon*, NPR, *Huffington Post*, HuffPost Live, *The Daily Beast*, *The Hollywood Reporter*, *The Public Record*, *Fox Nation*, *MSN News*, *Truth-Out*, *Green Is the New Red*, *Boing Boing, The Verge*, *Tech Dirt*, and *Al Jazeera America*. Much of this coverage has included the publication of documents released to me through FOIA requests, as well as my analysis of those documents or related issues.

Further, I am currently collaborating with *Al Jazeera America* journalist and author Jason Leopold on popular articles pertaining to issues of open government, the policing of dissent, and national security.

*As should be clear from the above, I have the ability and firm intention to disseminate to the public significant expansions of understanding of government operations based on my analysis of the requested disclosures.*

ii) Additional Note on Scholarly Historical Research and the Public Interest:

Although I have above provided extensive information supporting objectively reasonable arguments for the public interest of my request beyond that of scholarly interest alone, case law on this matter is emphatically clear that scholarly historical inquiry alone satisfies the FOIPA public interest requirement. *National Treasury Employees Union v. Griffin*, 258 U.S. App. D.C. 302 (D.C. Cir. 1987).

The courts have been equally clear that, in order to satisfy this public interest requirement, "the public" to be benefitted by release of records to a scholar need not be the entire public. Rather, it need only to be larger than the requester him or herself. As the court ruled in *Ettlinger v. FBI*,

> *requested information need not benefit the entire public. Benefit to a population group of some size, which is distinct from the requester alone, is sufficient. Ettlinger v. FBI*, 596 F. Supp. 867, 876 (D. Mass. 1984).

I have herein substantially demonstrated that the population groups (scholarly and otherwise) significantly benefited by my analysis of the requested release are far larger than me alone. As such, I have more than satisfied the requirement for a fee waiver.

iii) Additional Note on Journalistic Research and the Public Interest:

Although I have herein provided extensive information supporting objectively reasonable arguments for the public interest of my request beyond that of journalistic inquiry alone, case law on this matter is emphatically clear that journalistic inquiry alone satisfies the FOIPA public interest requirement. *National Treasury Employees Union v. Griffin*, 811 F.2d, 644, 649 (D.C. Cir. 1987).

Further, as articulated in the amendments to FOIA established by the OPEN Government Act of 2007, I solidly meet the applicable definition of "a representative of the news media[.]" The OPEN Government Act of 2007 established that for FOIA purposes,

> 'a representative of the news media' means any person or entity that gathers information of potential interest to the public, uses its editorial skills to turn the

13

> raw materials into a distinct work, and distributes that work to an audience. 552(a)(4)(A)(ii)

Based on my completed and firmly intended research, analysis, and information dissemination activities detailed at length herein, I clearly satisfy this description.

Further, the OPEN Government Act of 2007's definition of "a representative of the news media" is taken nearly verbatim from language used by the United States Court of Appeals, District of Columbia Circuit in the court's 1989 FOIA fee waiver-oriented ruling in *National Security Archive v. Department of Defense*.[4] As the court also relatedly found in *National Security Archive v. Department of Defense*, a requester need not already have published numerous works in order to qualify as a representative of the news media. The court found that the express "intention" to publish or disseminate analysis of requested documents amply satisfies the above noted requirement for journalists to "publish or disseminat[e] information to the public." *National Security Archive v. Department of Defense*, 880 F.2d 1386, (D.C. Cir, 1989). As noted above, I am currently working on popular articles involving significant analysis of records obtained through FOIPA requests to be written by me and fellow journalist Jason Leopold. Additionally, as detailed above, I have already publicly disseminated significant analysis of documents obtained through FOIPA requests. I have expressed a firm intention to continue disseminating significant analysis of documents obtained through FOIPA requests. And I have demonstrated my ability to continue disseminating significant analysis of documents obtained through FOIPA requests.

Therefore, in that I am "person or entity that gathers information of potential interest to the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience," I solidly meet the applicable definition of "a representative of the news media." As such, I have again more than satisfied the requirement for a fee waiver.[5]

---

[4] The language in *National Security Archive v. Department of Defense* reads, "A representative of the news media is, in essence, a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience." *National Security Archive v. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir, 1989).

[5] Though the courts have subsequently narrowed the applicability of the *National Security Archive v. Department of Defense* ruling in terms of requirements to qualify as a representative of the news media (most notably in *Judicial Watch, Inc. v. United States Department Of Justice*), I still solidly satisfy even this narrowed understanding of "representative of the news media." In contrast to Judicial Watch, I have clearly demonstrated a firm intention to disseminate to the public my analysis of requested information. I have identified articles, an exhibit, and a book within which I firmly intend to, and in some cases already have, disseminated my analysis of requested information. I have identified other news media representative whom I have already fruitfully provided my analysis of requested information, and with whom I firmly intend to continue collaborating on future disseminations of requested information. Ultimately, in contrast to Judicial Watch, which the court found to "merely make available [] the requested information," I have established "a firm intention to disseminate" my analysis of the requested information. See *Judicial Watch, Inc. v. United States Department of Justice*, 185 F.Supp. 2d 54, 59 (D.D.C. 2002).

D.  The disclosure of the requested records is likely to contribute "significantly" to public understanding of government operations and activities because disclosure would enhance to a significant extent the public's understanding of the subject in question as compared to the level of public understanding existing prior to the disclosure

i) See above Section I.

ii) As noted above, the overwhelming preponderance of records I need to conduct my study are in the possession of the CIA and not in the public domain.


II.  DISCLOSURE OF THE INFORMATION IS NOT PRIMARILY IN MY COMMERCIAL INTEREST.

A.  Any commercial interest that I have which would be furthered by the requested disclosure is *de minimis.*

I am requesting the release of records to analyze for use in the production of scholarly and popular articles, scholarly books, scholarly and popular lectures, and scholarly and popular exhibits, as well as for continued collaboration with journalists and the continued provision of released records and my expert analysis of those records to journalists. Though scholars do occasionally get paid for some of the above, this is not generally the case, and when it does occur, the sums are modest. Most crucially, payment is not the primary purpose for which such work is conducted. For example, I will not receive payment for my dissertation. I have not received payment from my collaborations with or provisions to journalists. I did not receive payment for my exhibit at NIH or for the exhibit's subsequent website. I did receive a modest honorarium for my lecture at NIH, but this honorarium was not even sizeable enough to cover my airfare from California to Washington, DC to give the lecture.


B.  My primary interest in the requested information is not commercial, and the public interest is greater in magnitude than my commercial interest.

i) With good reason then, many federal agencies have a default policy of considering scholarly research inherently non-commercial. For instance, **the Department of Defense's website on the Freedom of Information Act states:**

> **"scholars writing books or engaged in other forms of academic research, may recognize a commercial benefit, either directly, or indirectly (through the institution they represent); however, normally such pursuits are primarily undertaken for educational purposes, *and the application of a fee charge would be inappropriate.*"[6]**

---

[6] http://www.dod.gov/pubs/foi/feewaiver.html (emphasis added)

It is for these reasons that I have routinely been granted full waivers of search and duplication fees for my FOIPA requests from the Department of the Army, Department of Defense, the FBI, and the USDA.

ii) The judicial case histories concerning similar scholarly requests for fee waivers affirm that release of the requested records in this case is solidly in the public interest and pursuat of primarily non-commercial ends.

In *Campbell v. U.S. Dept. of Justice*, a case arising from a scholar's efforts to secure release of files pertaining to FBI investigations of author James Baldwin, the court held, "The fact that a bona fide scholar profits from his scholarly endeavors is insufficient to render his actions 'primarily commercial' for purposes of calculating a fee waiver, as Congress did not intend for scholars (or journalists and public interest groups) to forego compensation when acting within the scope of their professional roles." *Campbell v. United States DOJ*, 164 F.3d 20 (1998).

Further, In *National Treasury Employees Union v. Griffin*, the court noted that the legislative history of the fee waiver provisions indicate "special solicitude for journalists and scholars."

> The legislative history of the fee waiver provision indicates special solicitude for journalists, along with scholars and public interest groups. While private interests clearly drive journalists (and journals) in their search for news, they advance those interests almost exclusively by dissemination of news, so that the public benefit from news distribution necessarily rises with any private benefit. Thus it is reasonable to presume that furnishing journalists with information will primarily benefit the general public[.] *National Treasury Employees Union v. Griffin*, 811 F.2d, 644, 649 (D.C. Cir. 1987).

Similarly, in *Ettlinger v. FBI*, a case involving a university professor seeking the release of FBI documents pertaining to investigations of members of a dissident political group, the court noted, "Though it is true that the plaintiff has some personal interest in the records sought, there is no indication whatsoever, nor do the defendants claim, that the plaintiff seeks those records solely with the intention of achieving commercial or private benefit." *Ettlinger v. FBI*, 596 F. Supp. 867, 880 (D. Mass. 1984).

*My request for the release of records is in essential ways identical to the situations in the case law above. I seek records on the operations and activities of government for the purpose of scholarly research and analysis, as well as the dissemination of that scholarly research and analysis. The disclosure of records will significantly benefit the public interest, and this benefit to the public is of vastly greater magnitude than my minimal commercial interest.*

iii) Additionally, the courts and the legislature have been deeply invested in ensuring that FOIPA duplication and search fees are not used by government agencies to deliberately or otherwise thwart legitimate scholarly and journalistic research:

This was made clear in *Better Government Ass'n v. Department of State,* in which the court ruled that, "The legislative history of the fee waiver provision reveals that it was added to FOIA 'in an attempt to prevent government agencies from using high fees to discourage certain types of requesters, and requests,' in particular those from journalists, scholars and nonprofit public interest groups." *Better Government Ass'n v. Department of State*, 780 F.2d 86, 89 (D.C. Cir. 1986).

This point is further elaborated in *Ettlinger v. FBI*,

> The legislative history of the FOIA clearly indicates that Congress intended that the public interest standard for fee waivers embodied in 5 U.S.C. § 552(a)(4)(A) be liberally construed. In 1974, Congress added the fee waiver provision as an amendment to the FOIA in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests. The 1974 Senate Report and the sources relied on in it make it clear that the public interest/benefit test was consistently associated with requests from journalists, scholars and non-profit public interest groups. There was a clear message from Congress that "this public-interest standard should be liberally construed by the agencies." The 1974 Conference Report, in which differences between the House and Senate amendments were ironed out, retained the Senate-originated public-interest fee waiver standard and further stated "the conferees intend that fees should not be used for the purpose of discouraging requests for information or as obstacles to disclosure of requested information." Further evidence of congressional intent regarding the granting of fee waivers comes from a 1980 Senate Subcommittee report. The report stated that "excessive fee charges . . . and refusal to waive fees in the public interest remain . . . 'toll gates' on the public access road to information." The report noted that "most agencies have also been too restrictive with regard to granting fee waivers for the indigent, news media, scholars . . ." and recommended that the Department of Justice develop guidelines to deal with these fee waiver problems. The report concluded: The guidelines should recommend that each agency authorize as part of its FOIA regulations fee waivers for the indigent, the news media, researchers, scholars, and non-profit public interest groups. The guidelines should note that the presumption should be that requesters in these categories are entitled to fee waivers, especially if the requesters will publish the information or otherwise make it available to the general public.

The court, in its *Ettlinger v. FBI* decision, continued that on 18 December 1980, a

> policy statement was sent to the heads of all federal departments and agencies accompanied by a cover memorandum from then United States Attorney General Civiletti which stated that he had "concluded that the Federal Government often fails to grant fee waivers under the Freedom of Information Act when requesters have demonstrated that sufficient public interest exists to support such waivers." The Attorney General went on to state: Examples of requesters who should ordinarily receive consideration of partial fee waivers, at minimum, would be representatives of the news media or public interest organizations, and historical researchers. *Such*

17

*waivers should extend to both search and copying fees, and in appropriate cases, complete rather than partial waivers should be granted.*

III. CONCLUSION.

As demonstrated above, the disclosure of the requested records will significantly contribute to expanded public understanding of government operations. I have the intent and ability to disseminate this significant expansion of public understanding of government operations. The public interest in this significant expansion of public understanding of government operations far outweighs any commercial interest of my own in the requested release. Accordingly, my fee waiver request amply satisfies the rules of 28 C.F.R. 16.11(k). Legislative history and judicial authority emphatically support this determination. For these reasons, and based upon their extensive elaboration above, I request a full waiver of fees be granted. I will appeal any denial of my request for a waiver of fees, and I will take the issue to the courts if necessary.

\*\*\*

Please do not hesitate to contact me if you have any questions concerning this request.

Thank you. I appreciate your time and attention to this matter.

/s/ RNS

Ryan Noah Shapiro
Doctoral Candidate
Program in History, Anthropology, & Science, Technology, and Society
Massachusetts Institute of Technology
ryannoah@mit.edu

301-602-3063
http://web.mit.edu/hasts/graduate/shapiro.html