**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| RYAN NOAH SHAPIRO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:14-cv-00019 (CRC) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, et. al. | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**NSA'S MOTION FOR SUMMARY JUDGMENT**

Defendant, the National Security Agency ("NSA"), by and through undersigned counsel, hereby moves pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h) for summary judgment in this Freedom of Information Act ("FOIA") action. The grounds for NSA's motion are set forth in the attached memorandum of points and authorities, the Declaration of David J. Sherman, and NSA's Statement of Material Facts Not in Genuine Dispute. For the reasons explained in the attached memorandum, NSA respectfully requests that the Court uphold, pursuant to FOIA exemptions (b)(1) and (b)(3), the government's *Glomar* responses to Plaintiff's FOIA requests seeking records relating to Nelson Mandela.

Dated: June 10, 2015

Respectfully submitted,

VINCENT H. COHEN, JR., DC BAR # 471489
Acting United States Attorney

DANIEL F. VAN HORN, DC BAR # 924092
Chief, Civil Division

By: ___*/s/ Damon Taaffe*_____
DAMON TAAFFE, D.C. Bar. # 483874

Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2544

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RYAN NOAH SHAPIRO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:14-cv-00019 (CRC) |
| | ) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| et. al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OF LAW IN SUPPORT OF NSA'S MOTION FOR SUMMARY JUDGMENT

Nelson Mandela was a head of state and major international figure for fully five decades before his death in 2013.  Plaintiff, Noah Shapiro, a doctoral student at the Massachusetts Institute of Technology, submitted a FOIA request to the NSA seeking "any and all records that were prepared, received, transmitted, collected and/or maintained by the National Security Agency (NSA) mentioning" Mandela.  *See* Sherman Decl. ¶ 10 and Ex. A thereto.  As explained below, however, whether NSA has such records is classified and therefore exempt from disclosure under FOIA, and is also shielded from disclosure under three separate statutes.  Thus, NSA properly responded to plaintiff's request with a *Glomar* response – neither confirming nor denying the existence of responsive records.  The Court should grant this motion, uphold NSA's *Glomar* response, and enter judgment in the NSA's favor.

## STATEMENT OF FACTS

By letter dated December 11, 2013, plaintiff submitted a FOIA request to the NSA seeking all records "mentioning the deceased individual Rolihlahla Mandela (aka Nelson Mandela, aka Madiba, aka Tata)."  *See* Sherman Decl. ¶ 10, and Ex. A thereto.  NSA responded

by letter dated December 21, 2013, informing plaintiff that NSA could not acknowledge the existence or non-existence of intelligence records responsive to his request, because doing so would reveal a currently and properly classified matter, and therefore, NSA was denying plaintiff's request pursuant to FOIA Exemptions 1 and 3. *See* Sherman Decl. ¶ 11 and Ex. B thereto.

Plaintiff appealed NSA's decision by letter dated January 7, 2014. *See* Sherman Decl. ¶ 12 and Ex. C thereto. NSA acknowledged receipt of plaintiff's appeal on January 24, 2014, assigned an appeal number to the case, and advised plaintiff that a large number of appeals were ahead of his in NSA's queue, and that appeals are processed in the order received. *See* Sherman Decl. ¶ 12 and Ex. D thereto. Before receiving a determination from NSA on his appeal, plaintiff filed the instant lawsuit. *See* ECF No. 9 (amended complaint). NSA now moves for summary judgment and an order affirming those responses.

## ARGUMENT

FOIA represents a balance struck by Congress "'between the right of the public to know and the need of the Government to keep information in confidence.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). Thus, while FOIA generally requires agency disclosure, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see* 5 U.S.C. § 552(b). Although these exemptions should be "narrowly construed," (*Abramson*, 456 U.S. at 630), they should be given "meaningful reach and application," (*John Doe*, 493 U.S. at 152). An agency is entitled to summary judgment in an action such as this one "when the agency demonstrates that it has fully discharged its obligations under FOIA," (*Wilbur v. CIA*, 273 F.

Supp. 2d 119, 124 (D.D.C. 2003)), by providing proper justification for any nondisclosure.  *See*

*Wheeler v. CIA*, 271 F. Supp. 2d 132, 136 (D.D.C. 2003).

"In determining whether the agency has satisfied this burden, the Court may rely solely

on agency affidavits," (*Grove v. Dep't of Justice*, 802 F. Supp. 506, 509 (D.D.C. 1992) (internal

citations omitted)), and should award summary judgment "solely on the basis of information

provided by the agency in declarations," (*Darui v. United States Dep't of State*, 798 F. Supp. 2d

32, 37 (D.D.C. 2011) (internal quotations omitted)).  Ordinarily, the declarations should

"describe 'the [responsive] documents and the justifications for nondisclosure with reasonably

specific detail, demonstrate that the information withheld logically falls within the claimed

exemption, and are not controverted by either contrary evidence in the record nor by evidence of

agency bad faith.'"  *Id.* (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.

1981)).  A *Glomar* response, however, is "an exception to the general rule that agencies must

acknowledge the existence of information responsive to a FOIA request and provide specific,

non-conclusory justifications for withholding that information."  *Roth v. United States Dep't of*

*Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011); *see also Greenberg v. United States Dep't of*

*Treasury*, 10 F. Supp. 2d 3, 24 (D.D.C. 1998) ("Although an agency must usually provide

detailed affidavits proving that it performed an adequate search for documents, an exception

exists if the agency properly refuses to confirm or deny the existence of records . . . .").

Thus, here, the relevant determination for the Court is whether the agency's declaration

provides "sufficiently detailed and persuasive reasons for taking the position that it will neither

confirm nor deny the existence or non-existence of any responsive records."  *Wheeler*, 271 F.

Supp. 2d at 141.  Unless the declaration is "deficient, the court need not conduct further inquiry

into [its] veracity."  *Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F. Supp. 2d 41, 45

(D.D.C. 2001).  Rather, such a declaration "enjoy[s] a presumption of good faith, which may not

be rebutted by purely speculative claims."  *Mack v. Dep't of Navy*, 259 F. Supp. 2d. 99, 105

(D.D.C. 2003) (internal quotations omitted).  As demonstrated by the Declaration of David J.

Sherman, attached hereto, NSA's *Glomar* response was proper and should be upheld pursuant to

FOIA exemptions (b)(1) and (b)(3).  *See Larson v. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir.

2009) (noting that these exemptions "cover not only the content of protected government records

but also the fact of their existence or nonexistence, if that fact itself properly falls within the

exemption").

## I.  NSA'S *GLOMAR* RESPONSE SHOULD BE UPHELD PURSUANT TO EXEMPTION 1.

Notwithstanding plaintiff's unsubstantiated claims to the contrary, whether or not NSA

has collected records mentioning Nelson Mandela is properly classified under Executive Order

13526 and thus exempt under (b)(1).  Exemption (b)(1) protects records that are: "(A)

specifically authorized under criteria established by an Executive order to be kept secret in the

interest of national defense or foreign policy, and (B) are in fact properly classified pursuant to

such Executive order."  *See* 5 U.S.C. § 552 (b)(1).  This exemption thus "establishes a specific

exemption for defense and foreign policy secrets, and delegates to the President the power to

establish the scope of that exemption by executive order."  *Military Audit Project*, 656 F.2d at

737.  An agency can demonstrate that it has properly withheld information under exemption

(b)(1) if it establishes that it has met the requirements of the applicable Executive Order.

Substantively, the agency must show that the information at issue logically falls within the

exemption, *i.e.*, the Executive Order authorizes the classification of the information at issue.

Procedurally, the agency must demonstrate that it followed the proper procedures in classifying

the information.  *See Salisbury v. United States*, 690 F.2d 966, 970-73 (D.C. Cir. 1982); *Military*

4

*Audit Project*, 656 F.2d at 737-38.  An agency that demonstrates substantive and procedural compliance with an applicable Executive Order is entitled to summary judgment.  *See Abbotts v. Nuclear Regulatory Comm'n*, 766 F.2d 604, 606-08 (D.C. Cir. 1985).  Here that order is Executive Order No. 13526, "Classified National Security Information."  Under Section 1.1(a) of that order, information may be classified if:

> (1) an original classification authority is classifying the information;

> (2) the information is owned by, produced by or for, or is under the control of the United States Government;

> (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and

> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Classified National Security Information, Exec. Order No. 13526, 75 Fed. Reg. 707, 707 (Dec. 29, 2009) ("Executive Order No. 13526").  As demonstrated by the Sherman Declaration, these conditions are met here.  *See Judicial Watch v. United States Dep't of Defense*, 715 F.3d 937, 940 (D.C. Cir. 2013) ("Agencies may establish the applicability of Exemption 1 by affidavit (or declaration).").

### A.    An Original Classification Authority Has Properly Classified the Fact of the Existence or Not of the Information Requested by Plaintiff.

Mr. Sherman has original classification authority and has determined that acknowledging the existence or nonexistence of intelligence information as requested by plaintiff would reveal information that is currently and properly classified in accordance with Executive Order ("E.O.") 13526.  *See* Sherman Decl. ¶¶ 3, 16-20.  Section 1.3(a) of Executive Order 13526 provides that the authority to classify information "may be exercised . . . [by] United States Government officials delegated this authority pursuant to [section 1.3(c)]."  75 Fed. Reg. at 708.  Section

5

1.3(c)(2) provides that "'Top Secret' original classification authority may be delegated only by the President, the Vice President, or an agency head or official designated pursuant to [section 1.3(a)(2)]." *Id.* Pursuant to such delegation, Mr. Sherman is "a TOP SECRET original classification authority pursuant to Section 1.3 of Executive Order [] 13526." Sherman Decl. ¶ 2. In that capacity, he has concluded that "[a]cknowledging the existence or non-existence of responsive records would disclose information that is currently and properly classified TOP SECRET pursuant to Section 1.2(1) of E.O. 13526 because such a positive or negative response reasonably could be expected to cause exceptionally grave damage to the national security." *Id.* ¶ 17. Thus, condition (1) of Executive Order 13526 is satisfied by the information withheld from plaintiff.

**B.      Whether or Not Records Responsive to Plaintiff's FOIA Requests Exist Is Government Information.**

The second condition of Executive Order 13526 is also met by the information at issue here. *See* 75 Fed. Reg. at 707 (requiring that information originally classified under Executive Order 13526 be "owned by, produced by or for, or [be] under the control of the United States Government"). "The technological infrastructure that supports NSA's foreign intelligence information collection network has taken years to develop at a cost of billions of dollars and significant effort." *Id.* at ¶ 5. Thus, whether or not such information exists is under the control of the U.S. government, in satisfaction of the second condition for classification under Executive Order 13526.

**C.      The Information Plaintiff Requested Is Within a Category Identified in Section 1.4 of Executive Order No. 13526.**

The information over which the NSA has asserted exemption (b)(1) satisfies the third condition of Executive Order 13526. *See* 75 Fed. Reg. at 707 (requiring that information originally classified under this order be within a category identified in section 1.4). Section 1.4

of E.O. 13526 sets forth the applicable categories of information that may be currently and

properly classified.  Section 1.4's categories include information concerning "intelligence

activities (including covert action)" and "intelligence sources or methods, or cryptology."  *Id.* at

709.  The information plaintiff has requested clearly falls within those categories.  *See* Sherman

Decl. ¶ 16 ("The categories of classified information at issue here are those found in Section

1.4(c), which includes intelligence activities (including covert action), intelligence sources and

methods, or cryptology.").  Thus, all of the substantive requirements of Executive Order 13526

are satisfied with respect to the information withheld from plaintiff.

> **D.     The Acknowledgement of the Existence or Nonexistence of the Information**
> **Requested by Plaintiff Reasonably Could Be Expected to Damage National**
> **Security.**

The fourth condition of information classified pursuant to Executive Order 13526

requires, as here, that "the original classification authority determine[] that the unauthorized

disclosure of the information reasonably could be expected to result in damage to the national

security."  75 Fed. Reg. at 707.  Any "agency statement of threatened harm to national security

will always be speculative to some extent, in the sense that it describes a potential future harm."

*Halperin v. CIA*, 629 F.2d 144, 149 (D.C. Cir. 1980) (internal quotations omitted).  "The

question, then, is whether the agency's justification . . . appears logical or plausible."

*International Counsel Bureau v. CIA*, 774 F. Supp. 2d 262, 271 (D.D.C. 2011).  Recognizing that

national security is a uniquely executive purview, courts typically defer to such an agency

determination.  *Center for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir.

2003) ("[I]n the FOIA context, we have consistently deferred to executive affidavits predicting

harm to the national security, and have found it unwise to undertake searching judicial review.");

*Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977) ("Few judges have the skill or experience

to weigh the repercussions of disclosure of intelligence information."); *see also Halperin*, 629

F.2d at 148 ("Judges . . . lack the expertise necessary to second-guess [] agency opinions in the typical national security FOIA case").  Thus, the Court should defer here to Mr. Sherman's assessment of the likely repercussions to the national security from disclosure of the information requested by plaintiff.

In his declaration, Mr. Sherman explains that such information "must be maintained in strictest secrecy because of the fragility of the ability to exploit foreign communications." Sherman Decl. ¶ 8.  The "[d]isclosure of even a single intercepted communication holds the potential to reveal the intelligence collection techniques that are applied against targets around the world." *Id.*  "Once alert, [] targets may change the way they communicate, which could inhibit access to the target's communications and [] deny the United States access to information crucial to the defense of the United States both at home and abroad." *Id.*  Should that occur, "all of the intelligence from that source [would be] lost unless and until NSA can establish new and equivalent exploitation of that target's signals" – a loss "extremely harmful to the national security of the United States." *Id.*; *see also id.* ¶ 17 (noting that "[a]ny disclosure of this information would obviously and immediately affect the ability of NSA to counter threats to the national security of the United States").

Moreover, "acknowledging the existence or non-existence of responsive records on particular individuals or organizations subject to surveillance would provide our adversaries with critical information about the capabilities and/or limitations of the NSA, such as the types of communications that may be susceptible to NSA detection." *Id.* ¶ 18.  Specifically, "[c]onfirmation by NSA that a person's activities are not of foreign intelligence interest or that NSA is unsuccessful in collecting foreign intelligence information on their activities on a case-by-case basis would allow our adversaries to accumulate information and draw conclusions

about NSA's technical capabilities, sources, and methods." *Id.* Thus, "[f]or example, if NSA were to admit publicly in response to an information request that no information about Persons X or Y exists, but in response to a separate information request about Person Z state that no response could be made, this would give rise to the inference that Person Z is or has been a target." *Id.* The accumulation of such inferences over time "would disclose the targets and capabilities, and therefore the sources and methods, of NSA's [signals intelligence] activities and functions and inform our adversaries of the degree to which NSA is aware of some of their operatives or can successfully exploit particular communications." *Id.* For that reason, NSA cannot respond to a particular FOIA request, as here, "in isolation, but must assume that our adversaries may examine all released information together." *Id.* ¶ 19; *see also id.* (noting that such a compilation of information "if disclosed, could reasonably be expected to cause exceptionally grave and irreparable damage to the national security by providing our adversaries a road map that instructs them on which communications modes or personnel remain safe or are successfully defeating NSA's capabilities"); *id.* ¶ 7 (noting that "[p]ublic disclosure of either the capability to collect specific signals or the substance of the [signals intelligence] information itself can easily alert foreign adversaries to the vulnerability of their signals").

The last condition for classification under Executive Order 13526 therefore clearly is satisfied here and thus whether or not NSA has records relating to Nelson Mandela is exempt under (b)(1).

## II.     NSA'S *GLOMAR* RESPONSE SHOULD BE UPHELD PURSUANT TO EXEMPTION 3.

Although the Court need not reach NSA's exemption (b)(3) argument, that exemption too is dispositive of this case. *See People for the Am. Way Found. v. NSA*, 462 F. Supp. 2d 21, 29 (D.D.C. 2006) (upholding under exemption (b)(3) NSA's *Glomar* response to a request seeking

"NSA records related to the surveillance of plaintiff").  That exemption exempts from FOIA information whose disclosure is prohibited by *another* statute, if that statute either:  (A) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue;" or (B) "establishes a particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A)(i)-(ii).  This other statute "must, on its face, exempt matters from disclosure."  *Reporters Comm. for Freedom of Press v. Dep't of Justice*, 816 F.2d 730, 735 (D.C. Cir.), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489 U.S. 749 (1989); *see also Essential Info., Inc. v. USIA*, 134 F.3d 1165, 1168 (D.C. Cir. 1998) (noting that a statute that prohibits "dissemination" and "distribution" of certain information within the United States qualifies as an exemption (b)(3) "nondisclosure" statute).  Unlike the requirements for exemption (b)(1), exemption (b)(3) does not require the government to demonstrate harm to the national security.  Exemption (b)(3)'s "applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage."  *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 761-62 (D.C. Cir. 1990) (same).

Here again, deference to the agency's determination that withheld information is within the coverage of an exemption (b)(3) statute is appropriate.  *See Reporters Comm.*, 816 F.2d at 735 n.5 (noting that "it may be proper to give deference to an agency's interpretation of what matters are covered by a statute, once the court is satisfied that the statute is in fact an Exemption 3 withholding statute"); *see also CIA v. Sims*, 471 U.S. 159, 179 (1985) (noting that "decisions of the Director [of the CIA], who must of course be familiar with 'the whole picture,' as judges are not, are worthy of great deference given the magnitude of the national security interests and

potential risks at stake").  Three such statutes clearly are implicated by the information Plaintiff has requested: (1) the National Security Agency Act of 1959, 50 U.S.C. § 3605, (2) 18 U.S.C. § 798, and (3) the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024(i)(1).  Thus, any one of these statutes alternatively and independently justifies NSA's *Glomar* response.

The first of these statutes, a statutory privilege unique to NSA, provides that "nothing in this chapter or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof."  50 U.S.C. § 3605; *see also Linder v. NSA*, 94 F.3d 693, 696 (D.C. Cir. 1996); *Hayden v. NSA*, 608 F.2d 1381, 1389 (D.C. Cir. 1979); Sherman Decl. ¶ 23.  This language therefore provides absolute protection from disclosure of *any* information concerning NSA activities.  *See id*.  As explained in the Sherman Declaration, "NSA's ability to produce foreign intelligence depends on its access to foreign and international electronic communications, but those "capabilities are both expensive and fragile."  *Id.* ¶ 7.  As a result, "Congress has specifically recognized the inherent sensitivity of the [signals intelligence] activities of the NSA."  *Id.* ¶ 9.  That information therefore is within the protection of the National Security Agency Act of 1959 and cannot be compelled here.

Such information alternatively is prohibited from disclosure by the second applicable statute, 18 U.S.C. § 798.  That statute prohibits "the unauthorized disclosure of classified information: (i) concerning the communications intelligence activities of the United States; or (ii) obtained by the process of communication intelligence derived from the communications of any foreign government."  Sherman Decl. ¶ 24.  The term "communications intelligence" encompasses all "procedures and methods used in the interception of communications and the

obtaining of information from such communications by other than the intended recipients." *Id.*; *see also* 18 U.S.C. § 798(b).  The information at issue here also clearly is within that definition. *See* Sherman Decl. ¶¶ 3-9.  Thus, 18 U.S.C. § 798 is an independent and alternative prohibition against that information's disclosure here.

Finally, Section 102A(i)(1) of the National Security Act of 1947, as amended by the IRTPA, 50 U.S.C. § 3024(i)(1), "protect[s] intelligence sources and methods from unauthorized disclosure," and thus provides an absolute protection similar to the protection in the National Security Agency Act of 1959.  *See* Sherman Decl. ¶ 25 ("Like the protection afforded to core NSA activities by Section 6 of the NSA Act of 1959, the protection afforded [by Section 102A(i)(1)] to intelligence sources and methods is absolute.").  As already demonstrated, the information Plaintiff seeks constitutes intelligence sources and methods, (*see* Sherman Decl. ¶¶ 3, 6-9 26), and thus its disclosure is prohibited alternatively by Section 102A(i)(1).[1]

## CONCLUSION

For the foregoing reasons, NSA respectfully requests that the Court grant this motion and enter judgment in its favor.

Dated:  June 10, 2015

Respectfully submitted,

VINCENT H. COHEN, JR., DC BAR # 471489
Acting United States Attorney

---

[1] As explained in the Sherman Declaration (¶¶ 27-28), plaintiff's related allegations of FOIA violations are without merit.  Plaintiff contends (ECF No. 9 ¶¶ 54, 57) that NSA violated FOIA by failing to grant his request for expedited processing and fee waivers, but NSA did not consider those requests due to its *Glomar* determination, which was timely.  Because NSA properly conducted no search, there was no cause to decide whether a search would be expedited or free.  Similarly misplaced is plaintiff's charge (ECF No. 9 ¶ 59) that NSA failed to conduct an adequate search.  As explained in this memorandum, the *Glomar* determination rendered moot any discussion of searches.

DANIEL F. VAN HORN, DC BAR # 924092
Chief, Civil Division

By: ____/s/ Damon Taaffe_____
DAMON TAAFFE, D.C. Bar. # 483874
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2544

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RYAN NOAH SHAPIRO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:14-cv-00019 (CRC) |
| ) | |
| CENTRAL INTELLIGENCE AGENCY, ) | |
| et. al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

### STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to Local Rule 7(h)(1), the National Security Agency ("NSA") submits this Statement of Material Facts not in Genuine Dispute in support of its Motion for Summary Judgment.

1.      By letter dated December 11, 2013, plaintiff submitted a FOIA request to the NSA seeking all records "mentioning the deceased individual Rolihlahla Mandela (aka Nelson Mandela, aka Madiba, aka Tata)."  *See* Sherman Decl. ¶ 10, attached hereto as Ex. A, and Ex. A thereto.

2.      NSA responded by letter dated December 21, 2013, informing plaintiff that NSA could not acknowledge the existence or non-existence of intelligence records responsive to his request, because doing so would reveal a currently and properly classified matter, and therefore, NSA was denying plaintiff's request pursuant to FOIA Exemptions 1 and 3.  *See* Sherman Decl. ¶ 11 and Ex. B thereto.

3.      Plaintiff appealed NSA's decision by letter dated January 7, 2014.  *See* Sherman Decl. ¶ 12 and Ex. C thereto.

4.      NSA acknowledged receipt of plaintiff's appeal on January 24, 2014, assigned an appeal number to the case, and advised plaintiff that a large number of appeals were ahead of his in NSA's queue, and that appeals are processed in the order received.  *See* Sherman Decl. ¶ 12 and Ex. D thereto.

5.      Before receiving a determination from NSA on his appeal, plaintiff filed the instant lawsuit.  *See* ECF No. 9 (amended complaint).

6.      Acknowledging the existence or non-existence of responsive records would disclose information that is currently and properly classified TOP SECRET pursuant to Section 1.2(1) of Executive Order 13526, because such a positive or negative response reasonably could be expected to cause exceptionally grave damage to the national security.  Any disclosure of this information would immediately affect the NSA's ability to counter threats to the national security.  *See* Sherman Decl. ¶ 17.

7.      Acknowledging the existence or non-existence of responsive records on particular individuals or organizations subject to surveillance would provide the country's adversaries with critical information about the capabilities and limitations of the NSA, such as the types of communications that may be susceptible to NSA detection.  Confirmation by NSA that a person's activities are not of foreign intelligence interest or that NSA is unsuccessful in collecting foreign intelligence information on their activities on a case-by-case basis would allow the country's adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods.  *See* Sherman Decl. ¶ 18.

8.      The information plaintiff seeks falls within the scope of several statutes.  Section 6 of the National Security Agency Act of 1959, 50 U.S.C. 3605, provides that "[n]othing in this chapter or any other law … shall be construed to require the disclosure of the organization or any

function of the National Security Agency, of any information with respect to the activities

thereof, …." This language states that, notwithstanding any other law, including the FOIA, NSA

cannot be compelled to disclose any information with respect to its activities. *See* Sherman Decl.

¶ 23.

       9.     The second applicable statute is 18 U.S.C. § 798, which prohibits the

unauthorized disclosure of classified information: (i) concerning the communications

intelligence activities of the United States, or (ii) obtained by the process of communications

intelligence derived from the communications of any foreign government. *See* Sherman Decl.

¶ 24.

      10.    The third applicable statute is Section 102A(i)(1) of the Intelligence Reform and

Terrorism Prevention Act of 2004, 50 U.S.C. § 3024, which states that "[t]he Director of

National Intelligence shall protect the intelligence sources and methods from unauthorized

disclosure." This protection afforded to intelligence sources and methods is absolute, and

whether the sources and methods at issue are classified is irrelevant for purposes of this statute.

*See* Sherman Decl. ¶ 25.

      11.    NSA's *Glomar* response was issued to plaintiff on December 31, 2013, which was

within 20 business days of NSA's receipt of plaintiff's FOIA request on December 24, 2013.

*See* Sherman Decl. ¶ 27.

Dated:  June 10, 2015

                         Respectfully submitted,

                         VINCENT H. COHEN, JR., DC BAR # 471489
                         Acting United States Attorney

                         DANIEL F. VAN HORN, DC BAR # 924092
                         Chief, Civil Division

By: ____/s/ Damon Taaffe_____
DAMON TAAFFE, D.C. Bar. # 483874
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2544

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| RYAN NOAH SHAPIRO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:14-cv-00019 (CRC) |
| | ) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| et. al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PROPOSED ORDER**

Upon consideration of the National Security Agency's ("NSA") Motion for Summary

Judgment, the opposition thereto, and the complete record in the case, it is hereby

ORDERED that NSA's motion is GRANTED.  Judgment is entered in favor of NSA.

SO ORDERED.

Date: _____                _____
                                                          United States District Court Judge