UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RYAN NOAH SHAPIRO, </br></br> PLAINTIFF </br> vs. </br></br> CENTRAL INTELLIGENCE AGENCY, </br></br> DEFENDANT | Civil Action No. 1:14-cv-19 (CRC) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CIA'S MOTION TO DISMISS**

A valid FOIA request must "reasonably describe" the records sought. 5 U.S.C. § 552(a)(3)(A). Defendant CIA moves to partially dismiss the Amended Complaint on the grounds that it does not reasonably describe the records sought. Because Plaintiff's request to the CIA for records "mentioning the deceased individual Rolihlahla Mandela, (aka Nelson Mandela, aka Madiba, aka Tata)" reasonably describes the records sought, the request is valid and the CIA's motion should be denied.

A. Introduction

There are two ways in which a request may fail to "reasonably describe" the records sought. First, a request may be so vague that the agency cannot know precisely what is being sought. *Hudgins v. Internal Revenue Serv.*, 808 F.2d 137, 21 (D.D.C. 1987) ("the description must be 'sufficiently detailed so that a professional employee of the agency, familiar with the general subject area, could reasonably be expected to find the desired documents'") (quoting legislative history). Second, "[a]n agency need not honor a request

1

that requires an unreasonably burdensome search." *Am. Fed. of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (internal quotations omitted).

The CIA asserts that Plaintiff's FOIA request is defective in both of these ways. Further, the CIA suggests that the request is defective because there are too many potentially responsive records. None of these arguments are meritorious and the CIA's motion to dismiss should be denied.

B.  Plaintiff's FOIA request clearly identifies the records he is seeking

As the CIA correctly points out, in determining whether the FOIA request reasonably describes the records sought, the "linchpin inquiry is whether the agency is able to determine precisely what records are being requested." *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982). In support of its position that Plaintiff's request does not reasonably describe the records sought, the CIA cites a number of cases from this jurisdiction holding that a request for records "relating" to, "pertaining" to, or "concern[ing]" a particular subject matter does not reasonably describe the records sought. (Def. Mot. at 8-9, *citing Sack v. CIA*, 53 F. Supp. 3d 154, 163-64 (D.D.C. 2014) ("pertaining"); *Freedom Watch v. CIA*, 895 F. Supp. 2d 221, 229 (D.D.C. 2012) ("relating"); *Judicial Watch, Inc.*, 108 F. Supp. 2d at 27-28 (D.D.C. 2000) ("related"); *Hunt v. Commodity Futures Trading Com.*, 484 F. Supp. 47, 51 (D.D.C. 1979) ("concerned")). None of these cases support the CIA's position, however, because Plaintiff has not sought records "relating" to, "pertaining" to, or "concern[ing]" Mandela. Instead, Plaintiff has sought records "mentioning" Mandela. This difference is significant.

The CIA argues that "requests that do not permit for the easy identification by Agency personnel do not comply with the FOIA's requirements." (Def. Mot. at 8.) That may be so, but the CIA fails to recognize that the *reason* a request for records "relating" to, "pertaining" to, or "concern[ing]" a person does not permit easy identification is that such language often renders the request too vague. A request for "all documents 'relating to' a subject is usually subject to criticism as overbroad since life, like law, is a 'seamless web,' and all documents 'relate' to others in some remote fashion." *Massachusetts Dep't. of Pub. Welfare v. U.S. Dep't of Health & Human Servs.*, 727 F. Supp. 35, 36 n.2 (D. Mass. 1989); *Freedom Watch v. Dep't of State*, 925 F. Supp. 2d 55, 61 (D.D.C. 2013); *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101 (D.D.C. 2013). Plaintiff's request does not suffer from this infirmity. Plaintiff seeks records which "mention[]" Mandela, not records which "pertain" or "relate" to Mandela. A FOIA analyst can easily identify whether or not a given record "mention[s]" Mandela and therefore is responsive to Plaintiff's request. Whether or not a document "mention[s]" Mandela will be apparent from the face of the document.

In *Sack*, this Court drew precisely this distinction between a request for records which "reference" a subject and records "pertaining" to a subject. The reason that the latter often poses a problem, according to the Court, is "because the lack of clarity leaves the agency to guess at the plaintiff's intent." 53 F. Supp. 3d at 164. Similarly, in *Fonda v. CIA*, 434 F. Supp. 498, 501 (D.D.C. 1977), the CIA conducted a search for all documents "in which [plaintiff's] name is mentioned," but refused her request that the CIA search for documents which "concern her" but do not mention her name. This Court observed, "The difficulties in such an open-ended search are apparent. Plaintiff offers no criterion by

which defendants can determine which documents 'concern her.'" The Court then "h[e]ld that plaintiff's request for a further search does not 'reasonably describe' the records she seeks. Under the circumstances, defendants' interpretation of plaintiff's original FOIA request was reasonable."

In this case, Plaintiff's request is for records which "mention" Mandela and not records which "concern" Mandela. It thus does not pose the problem of interpretation because the request is clear and the agency is not left to guess at Plaintiff's intent. A record which mentions Mandela by name or other descriptor is responsive, and a record which does not mention Mandela is not responsive.

The CIA's refusal to process Plaintiff's straightforward request is what this Court had in mind when it expressed concerns about the CIA's use of the "reasonably describes" requirement to refuse to process by FOIA requests. In *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 277 (D.D.C. 2012), the plaintiff "argue[d] that the CIA interprets too broadly terms like 'relating to' and 'pertaining to' in FOIA requests, and the CIA allegedly relies on those overbroad interpretations to conclude that FOIA requests do not reasonably describe the records sought." The court did not strike down the CIA's policy because the plaintiff had not alleged "a categorical refusal to process any requests that contain these phrases." Nevertheless, the court found "troubling the plaintiff's claim that the CIA is systematically attempting to overuse the 'reasonably describes' requirement because such an abuse of the FOIA's statutory language would result in a large swath of FOIA requests never even getting processed, even though they should be." In refusing to process Plaintiff's request – a request which clearly identifies what Plaintiff is seeking –

the CIA is engaging in precisely the type of stonewalling that this Court criticized in *Nat'l Sec. Counselors*.

    C.  <u>The CIA has not demonstrated that a search for records mentioning Mandela would be overly burdensome</u>

The CIA also contends that Plaintiff's FOIA request would require an overly burdensome search. It argues that "Plaintiff requests a search of every corner of the Agency and names thirty discrete records systems," and observes that "the request contains no date restrictions or topical limitations." (Def. Mot. at 7.) There are several problems with the CIA's argument.

First, the CIA offers no factual foundation for its claim that a search of the records systems identified by Plaintiff would be overly burdensome. As the CIA has filed a motion to dismiss and not a motion for summary judgment, the Court is limited to examining the First Amended Complaint and related documents. Nothing in the pleadings or related documents explains how burdensome a search would be. The CIA presents no evidence of how many man-hours would be required to process Plaintiff's request, or why its records systems could not be easily searched for mentions of Mandela. Instead, the CIA offers only the conclusory statements of counsel. The CIA has therefore not met its burden of demonstrating that a search would be overly burdensome. *See Hall v. CIA*, 881 F. Supp. 2d 38, 53 (D.D.C. 2012) ("The CIA has remained silent on the issue of estimating the man-hours involved . . . . This Court will not find a search unduly burdensome on conclusory statements alone.")

Second, the CIA is not required to search every system of records identified by Plaintiff in his request. *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("There is no requirement that an agency search every record system"); *Marks v. United States (Dep't of Justice)*, 578 F.2d 261 (9th Cir. 1978) ("even if Marks is considered to have requested an all-encompassing search of the records of every field office of the FBI, the FOIA does not mandate that the FBI comply.") The "records sought" section of Plaintiff's request reads as follows: "I request disclosure of any and all records that were prepared, received, transmitted, collected and/or maintained by the Central Intelligence Agency (CIA) mentioning the deceased individual **Rolihlahla Mandela, (aka Nelson Mandela, aka Madiba, aka Tata)**." The FOIA request therefore requires the CIA simply to search in locations where records mentioning Mandela are likely to be located. Plaintiff has listed a number of locations where he would like the CIA to search, but the CIA need only search these locations if it is reasonably likely that records mentioning Mandela are likely to be located there. *Ogelsby*, 920 F.2d at 68 (agency need only search records systems "likely to turn up the information requested.")

Third, the CIA criticizes Plaintiff's request for not containing a date range or topical limitation. (Def. Mot. at 7.) However, it is not clear how such limitations would make the search less burdensome. A date range or topic limitation would likely require the CIA to review each record mentioning Mandela and determine the date it was created, as well as assessing whether it falls within the topical limitation. A topical limitation (e.g. "records mentioning Mandela which relate to his arrest") would also incorporate precisely the type of vagueness that makes requests "relating" to a subject matter problematic. Additionally,

...

the CIA has failed to demonstrate that a search not limited by date or topic would be overly burdensome.

Finally, it is notable that none of the other agencies in this lawsuit have refused to process Plaintiff's nearly identically-worded FOIA requests for records mentioning Mandela on the grounds that doing so would be overly burdensome or that the requests do not identify with particularity the records sought. *See Peyton v. Reno*, 1999 U.S. Dist. LEXIS 12125 (D.D.C. 1999) (ordering agency to process a request for records regarding the plaintiff and observing that the "Court is aware from the many FOIA actions filed here that other agencies routinely conduct searches for records on an individual's name.") The CIA is not uniquely unable to process a request for records mentioning an individual by name. *See Fonda*, 434 F. Supp. at 501 (CIA searched for all records in which Jane Fonda's name is mentioned). The CIA has offered no evidence that it would be impossible or impracticable to locate the requested records. Indeed, records systems such as CREST are fully text-searchable, and in a matter of a few seconds, undersigned counsel was able to use the online CREST finding aid to locate 22 hits using the search term "Mandela." *See http://www.foia.cia.gov/search/site/mandela*. Other CIA records systems also allow records to be retrieved by name. For example, Office of the Director Action Center Records, Directorate of Operations Records, Research System Records, and many other records are readily retrievable by the name of the individual who is of foreign intelligence or counterintelligence interest to the CIA. *See* http://www.gpo.gov/fdsys/pkg/FR-2005-07-22/pdf/05-13889.pdf.

In the past, the CIA has conducted numerous searches of the type sought by Plaintiff in this case. The CIA has compiled over a thousand "name files" on Nazi and Japanese

war criminals from its various file systems. *See* https://catalog.archives.gov/id/573459 ("the CIA selected and copied documents from throughout its various file systems. The CIA then created this series by combining copies about a particular person into an individual file"); http://www.archives.gov/iwg/declassified-records/rg-263-cia-records/. In creating the name files, the CIA was able to use search terms to locate responsive records. *Id.* The CIA also compiled dossiers on a number of Nazi leaders, which are accessible by name. *Id.*

Similarly, in *Hall v. CIA*, 2000 U.S. Dist. LEXIS 22695 at *5-*7 (D.D.C. Sept. 8, 2000) ("*Hall I*") the CIA processed and released records in response to a request for "Any and all records in the possession and control of your agency relating to 19 individuals who allegedly are POW/MIAs from the Vietnam era." In a subsequent request, the plaintiffs sought "records relating to forty-four particular POW/MIAs from whose next-of-kin Hall had received privacy waivers as well as approximately 1,700 POW/MIAs whose next-of-kin have made a general authorization for the release of those individuals' information." *Hall v. CIA*, 668 F. Supp. 2d 172, 176 (D.D.C. 2009) ("*Hall II*"). This time, the CIA refused to process the request, arguing that it was "too vague to process" and that the requesters did not provide additional information required to conduct a proper search. This Court rejected the CIA's argument, finding that the CIA had "conceded that a search [for names] is possible." *Id.* at 180. In *Hall v. CIA*, 881 F. Supp. 2d 38, 52 (D.D.C. 2012) ("*Hall III*"), the CIA continued to resist performing a name search, this time arguing that "a search for all 1,711 names without additional identifying information would be unduly burdensome." As it does in the present case, "[t]he CIA also argues that searching its archived records for any names- even those

names for which it has been supplied additional identifying information- would be unduly burdensome." *Id.* at 53. This Court "disagree[d], and therefore denie[d] the CIA's motion for summary judgment, and grant[ed] plaintiffs' motion for summary judgment in regard to the Item 5 systems search." *Id.* This Court then ordered the CIA to search, among other things, 140,000 potentially responsive documents in its CADRE system and 16,423 hard-copy file folders in its archived records. *Id.* at 53-54.

Compared to the extensive effort required to compile over a thousand name files of Nazi and Japanese war criminals or to search for all records related to 1,711 POW/MIAs, it cannot be said that processing Plaintiff's request for records mentioning a single named individual would be overly burdensome. These examples demonstrate that the CIA clearly has the ability to search for records by an individual's name, just as it did in compiling the name files, searching the CADRE and archived records systems, and searching for records mentioning Jane Fonda. The CIA also has the ability to search for records mentioning Mandela or his "code name"[1] in CREST, the Office of the Director Action Center Records, Directorate of Operations Records, and Research System Records, all of which are searchable by name. The possibility that such a search may yield a large number of responsive records is, as explained below, irrelevant.

  D. The volume of potentially responsive records is not relevant to the issue of
     whether the request reasonably describes the records sought

---

[1] Persons associated with intelligence activities and operations are identified not only by their real names, but also by various aliases and code names. See http://www.archives.gov/iwg/declassified-records/rg-263-cia-records/

The CIA appears to suggest that Plaintiff's FOIA request is invalid because there are likely too many records responsive to Plaintiff's requests. (Def. Mot. at 9) ("Any oblique reference to Mandela would transform a document, which otherwise contains no substantive discussion about him, into a responsive record.") As an initial matter, the CIA is incorrect that an entire document would be responsive if it contained no substantive discussion of Mandela and only an "oblique reference." The D.C. Circuit has suggested that "an agency is not required to produce entire documents that only incidentally mention the subject of the request." *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 893 n.5 (D.C. Cir. 1995). More importantly, however, the CIA points to no cases holding that a FOIA request is invalid simply because the amount of responsive records is voluminous. The FOIA, in fact, contemplates that some valid requests will involve a voluminous amount of records. *See* 5 U.S.C. § 552(a)(6)(B)(iii)(II) (an agency is entitled to an additional ten days to "appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request number of documents.")

Cases in this jurisdiction which have addressed the question have held that the existence of a large volume of responsive material does not render a FOIA request invalid for failing to reasonably describe the records sought. In *Yeager*, the requester sought the disclosure of an entire database which consisted of over one million records. 678 F.2d at 322 ("Yeager has requested the substantive content of the entire NADDIS computer system— over one million records on suspects, drug offenders, informants and witnesses.") The agency argued that "a request for all the records within a particular computer system is overbroad and thus does not 'reasonably describe' those records as

required by the Act." *Id.* at 326. The D.C. Circuit noted that the agency's argument "raises serious questions concerning the allowable scope of FOIA requests," but nevertheless held that "the number of records requested appears to be irrelevant to the determination whether they have been 'reasonably described[.]'" *Id.* Thus, the D.C. Circuit concluded that the district court had properly rejected this argument, and affirmed its decision. *Id.* ("This argument was properly rejected by the district court.") Similarly, this Court expressed its skepticism that the volume of records could ever be the basis for the denial of a FOIA request. *Tereshchuk v. Bureau of Prisons*, 2014 U.S. Dist. LEXIS 130932 at *18-*19 ("This Court is skeptical that a FOIA request may be denied based on sheer volume of records requested. . . . Indeed, the Act puts no restrictions on the quantity of records that may be sought.")

   Even if FOIA did impose a restriction on the number of records that could be requested, the CIA has offered no facts to suggest that there exists a voluminous number of responsive records. It is expected that the CIA will invoke a Glomar response and refuse to conduct a search, much as the NSA has done in this case. It may well be that after briefing on any Glomar response, there are only a relatively small number of records that the CIA will be required to search for. Regardless, it is the agency which must demonstrate that the request is overly burdensome, and the CIA offers no evidence at all of the burden that would be imposed by responding to Plaintiff's FOIA request. *Id.* at *20 ("the burden of demonstrating overbreadth is substantial. When the reasonableness of search and production is questioned, the agency has the burden to produce a sufficient explanation as to why it would be unreasonably burdensome. *Cf. Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892, 315 U.S. App. D.C. 177

(D.C. Cir. 1995) (instructing the district court on remand to order an agency to search files likely to contain responsive information 'if it cannot provide sufficient explanation as to why such a search would be unreasonably burdensome'); *Public Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 2d 1, 6-7 (D.D.C. 2003) (rejecting defendants' claim '[w]ithout more specification as to why a search certain to turn up responsive documents would be unduly burdensome must be rejected,' despite its argument that the request would require the transport and manual search of 25,000 individual files).")

E. <u>The case law cited by the CIA supports Plaintiff's position</u>

Many of the cases cited by the CIA involved clearly defective FOIA requests which contrast sharply with Plaintiff's precisely defined request. For example, the 49-part FOIA request at issue in *Freedom Watch v. CIA*, 895 F. Supp. 2d 221, 229 (D.D.C. 2012) was "virtually incomprehensible," failed to define vague terms, and was so broad as to encompass any records "relating to . . . . Iran, Israel, Iraq, North Korea, Russia, Azerbaijan," and other countries. In contrast, the records sought by Plaintiff are described in a single, easily-understood sentence. Plaintiff does not seek any records "relating" to six different countries or even one country; he seeks records which specifically mention an identified individual. Thus, records merely "relating" to South Africa would not be responsive unless there is a mention of Mandela himself in the record.

In *Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 26 (D.D.C. 2000), the plaintiff sought "all records pertaining to contacts between Mr. Harmon or Ms. Haley and 'companies, entities, and/or persons related or doing or conducting business in any way with the People's Republic of China.'" This request was improper because it would have

required the agency "to investigate which companies having contacts with Mr. Harmon or Ms. Haley may have had dealings with China and to locate all documents relating to contacts between Mr. Harmon or Ms. Haley and those companies." *Id.* at 28. Plaintiff's FOIA request for records mentioning Mandela, in contrast, does not require the agency to conduct any investigation in order to understand the scope of his request. Indeed, to ensure that the agency had all the information it needed to process his request, Plaintiff's request included a description of Mandela and a *New York Times* article, both of which highlight facts that may be useful to the agency in searching for records.

In *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Commerce*, 907 F.2d 203, 205 (D.C. Cir. 1990), the requester sought "Inspection of *every* chronological office file and correspondence file, internal and external, for every branch office, staff office, assistant division chief office, division chief office, assistant director's office, deputy director's office, and director's office," and "Inspection of *every* division or staff administrative office file in the Bureau which records, catalogues, or stores SF-52s or stores promotion recommendation memos, or both" (emphases in original).  The D.C. Circuit held there was no dispute that these requests "identif[ied] the documents requested with sufficient precision to enable the agency to identify them." *Id.* at 209. Nevertheless, the court held that the requests were "so broad as to impose an unreasonable burden upon the agency" because "they would require the agency to locate, review, redact, and arrange for inspection a vast quantity of material." *Id.* The D.C. Circuit's opinion sheds little light on what would have been involved in such a search, but according to the district court's opinion, "The [Census] Bureau would have been doing little else for days but waiting on plaintiff's documentary repast had it acceded to

the request." *Am. Fed'n of Gov't Emps., Local 2782 v. United States Dep't of Commerce*, 632 F. Supp. 1272 (D.D.C. 1986). Here, the CIA offers no evidence that Plaintiff's FOIA request would be anywhere near as burdensome as the request in *AFGE*. Additionally, Plaintiff's FOIA request does not require the CIA to search every one of its offices. Many CIA offices would be unlikely to contain responsive records and therefore would not need to be searched. For example, the Office of Human Resources, the Office of the Chief Financial Officer, the Office of Medical Services, and the Office of Personnel Resources, to name just a few, would not need to be searched. This contrasts with the request in *AFGE* which required every single office and branch to be searched, and was therefore unreasonably burdensome.

F.   Conclusion

For the foregoing reasons, the CIA's motion to dismiss should be denied and the CIA should be ordered to process Plaintiff's FOIA request.

    /s/ Jeffrey Light
Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW, Suite 915
Washington, DC 20006
(202)277-6213
Jeffrey@LawOfficeOfJeffreyLight.com

*Counsel for Plaintiff*