# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN NOAH SHAPIRO**, <br><br> Plaintiff, <br><br> v. <br><br> **CENTRAL INTELLIGENCE AGENCY, <u>et</u> <u>al.</u>,** <br><br> Defendants. | Case No. 14-cv-00019 (CRC) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Ryan Shapiro brought this action against four federal agencies pursuant to the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  He alleges that each defendant has

violated FOIA by inadequately processing his request for all documents in their possession that

mention the famed South African activist and political leader Nelson Mandela.  The Federal

Bureau of Investigation ("FBI") and the Defense Intelligence Agency ("DIA") are in the process

of reviewing and producing documents in response to Shapiro's request.  The Central

Intelligence Agency ("CIA"), however, has moved to dismiss Shapiro's complaint, arguing that

he has not exhausted his administrative remedies because his FOIA request does not "reasonably

describe" the records he seeks.  And the National Security Agency ("NSA") has moved for

summary judgment, maintaining that its refusal even to confirm or deny the existence of what

Shapiro has requested is warranted under two statutory disclosure exemptions.  In his own cross-

motion for summary judgment, Shapiro claims that the information the NSA wishes to keep

secret has already been officially acknowledged; he also contends that the agency's blanket

nonresponse is premised on an unduly narrow interpretation of his FOIA request.

For the reasons explained below, the Court will deny the CIA's motion to dismiss, grant in part the NSA's motion for summary judgment, and deny Shapiro's cross-motion for summary judgment.

## I.    Background

Ryan Shapiro is a doctoral candidate at the Massachusetts Institute of Technology and a "historian of the political functioning of national security and the policing of dissent."  Pl.'s First Am. Compl. ("Compl.") ¶ 2.  On December 11, 2013, Shapiro submitted FOIA requests to the CIA, NSA, DIA, and FBI, "requesting copies of records mentioning or referring to" Nelson Mandela, the famed anti-apartheid activist and former President of South Africa.  Id. ¶ 21.  His requests to the CIA and the NSA were worded identically:  "I request disclosure of any and all records that were prepared, received, transmitted, collected and/or maintained by the [agencies] mentioning the deceased individual Rolihlahla Mandela (aka Nelson Mandela, aka Madiba, aka Tata)."  Compl. Ex. 3, at 1; id. Ex. 4, at 1.  Both agencies refused to comply with Shapiro's request, and the present motions stem from the parties' disagreement about the adequacy of these responses.

Shapiro requested that the CIA search "all electronic and paper/manual indices, filing systems, and locations," including "all of its directorates" and at least thirty enumerated "filing systems, indices, and locations."  Id. Ex. 3, at 4–5.  This request—for which Shapiro sought expedited treatment—also encompassed emails and publicly available records.  Id. at 2, 6.  In a letter dated March 10, 2014, transmitted after Shapiro filed his initial Complaint, the CIA notified him that it could not process his FOIA request in its current form because to do so "would require the Agency to perform an unreasonably burdensome search."  Def. CIA's Mot. Dismiss Ex. B, at 1.  The CIA further explained that "FOIA requires requesters to 'reasonably

describe' the information they seek so that professional employees familiar with the subject matter can locate responsive information with a reasonable amount of effort." Id.  The agency closed its letter by inviting Shapiro to narrow the scope of his "[e]xtremely broad" and "vague" request.  Id.

Instead, he amended his Complaint, claiming that the CIA had violated FOIA by "improperly withholding records, failing to conduct an adequate search, and . . . refusing to process the request at all."  Compl. ¶ 59.  The CIA has moved to dismiss Shapiro's First Amended Complaint, arguing that he failed to exhaust his administrative remedies because his FOIA request did not "reasonably describe[]" the records sought, as the statute requires. 5 U.S.C. § 552(a)(3)(A).

The NSA responded to Shapiro's FOIA request in a letter dated December 31, 2013.  It informed him that "[t]o the extent that you are seeking informational documents regarding Nelson Mandela," the agency had previously released one Cryptolog document[1] from 1996 that could be found at a particular web address.  Def. NSA's Mot. Summ. J. Ex. B, at 1.  Yet "[t]o the extent that you are seeking *intelligence information* on Nelson Mandela," the NSA invoked a so-called Glomar response, meaning that it refused even to confirm or deny the "existence or non-existence" of such records.  Id. (emphasis added).  According to the NSA, this fact falls within FOIA Exemptions One and Three, because it has been properly classified pursuant to an executive order and is protected from disclosure by three federal statutes.  Shapiro administratively appealed the NSA's denial of his request, but filed his Complaint before the

---

[1] Cryptolog, one of the NSA's "longest-lived technical publications," was "designed for the interchange of ideas on technical subjects in what was originally referred to as the Operations side of NSA."  The National Security Agency's Release of All Issues of Its Technical Periodical, "Cryptolog", National Security Agency, https://www.nsa.gov/public_info/_files/cryptologs/faqs_ for_cryptolog_release.pdf (last visited Mar. 15, 2016).

agency could resolve his appeal.  He alleges that the NSA has "violated FOIA by improperly

withholding records."  Compl. ¶ 59.  The NSA has moved for summary judgment, expanding on

its contention that FOIA Exemptions One and Three justify the agency's <u>Glomar</u> response.

Shapiro has cross-moved for summary judgment, contending that the NSA's <u>Glomar</u> response

was both incomplete and improper, because the NSA interpreted his request too narrowly and

has already officially acknowledged its interest in gathering overseas intelligence on Nelson

Mandela.

## II.   Legal Standards

Congress created FOIA "to pierce the veil of administrative secrecy and to open agency

action to the light of public scrutiny."  <u>ACLU v. U.S. Dep't of Justice</u>, 655 F.3d 1, 5 (D.C. Cir.

2011) (quoting <u>U.S. Dep't of the Air Force v. Rose</u>, 425 U.S. 352, 361 (1976)).  Despite this

broad mandate, FOIA contains a set of exceptions to the general obligation to provide

government records to the public.  5 U.S.C. § 552(b).  These exemptions are in place "to balance

the public's interest in governmental transparency against the 'legitimate governmental and

private interests [that] could be harmed by release of certain types of information.'"  <u>United

Techs. Corp. v. U.S. Dep't of Defense</u>, 601 F.3d 557, 559 (D.C. Cir. 2010) (quoting <u>Critical

Mass Energy Project v. Nuclear Reg. Comm'n</u>, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc)).

FOIA "mandates a strong presumption in favor of disclosure," and its "statutory exemptions,

which are exclusive, are to be 'narrowly construed.'"  <u>Nat'l Ass'n of Home Builders v. Norton</u>,

309 F.3d 26, 32 (D.C. Cir. 2002) (quoting <u>Rose</u>, 425 U.S. at 361).

"FOIA cases typically and appropriately are decided on motions for summary judgment."

<u>Defenders of Wildlife v. U.S. Border Patrol</u>, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  In deciding

a motion for summary judgment, the Court assumes the truth of the non-movant's evidence and

draws all reasonable inferences in the non-movant's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  Summary judgment is proper if the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The government bears the burden to establish that the claimed FOIA exemptions apply to each document for which they are invoked.  <u>ACLU v. U.S. Dep't of Defense</u>, 628 F.3d 612, 619 (D.C. Cir. 2011) ("<u>ACLU I</u>").  The government may satisfy this burden through declarations that describe the justifications for its withholdings in "specific detail, demonstrat[ing] that the information withheld logically falls within the claimed exemption[.]"  <u>Id.</u>  The agency's affidavits will not warrant summary judgment if the plaintiff puts forth contrary evidence or demonstrates the agency's bad faith.  <u>Id.</u>

When evaluating a motion to dismiss for failure to state a claim, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  Fed. R. Civ. P. 12(b)(6); <u>Elec. Privacy Info. Ctr. v. NSA</u>, 795 F. Supp. 2d 85, 90 (D.D.C. 2011).  To survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a complaint's factual allegations warrant a reasonable inference that the defendant is liable for the alleged misconduct.  <u>Id.</u>

### III.    Analysis

#### A.    The CIA's Motion to Dismiss

In its initial letter refusing to process Shapiro's FOIA request, the CIA explained that a search for all documents mentioning Nelson Mandela would be "unreasonably burdensome" *and* that Shapiro had not exhausted his administrative remedies because his request did not "reasonably describe" the records sought.  CIA's Mot. Dismiss Ex. B, at 1.  The agency has now

retreated from the first argument—and disclaimed any effort to estimate how time-consuming the search would be—because its "position is not based on the anticipated result of searches or the volume of potentially responsive records."  CIA's Mot. Dismiss 4.  Rather, the CIA argues that Shapiro's "request, on its face, is deficient."  Id.

The Court disagrees, finding that Shapiro's request "reasonably describes" the records he seeks.  5 U.S.C. § 552(a)(3)(A).  "The linchpin inquiry" on this score is "whether 'the agency is able to determine precisely what records are being requested.'"  Tereshchuk v. Bureau of Prisons, 67 F. Supp. 3d 441, 454 (D.D.C. 2014) (quoting Yeager v. DEA, 678 F.2d 315, 326 (D.C. Cir. 1982)).  Regardless of how onerous it might be to locate them, there can be no dispute about which items are being requested—records in the CIA's possession that "mention[]" Nelson Mandela or his three listed aliases.  True, one Court has suggested that agencies need not "release an entire document simply because the name of a person or organization which is the subject of the request is mentioned in the document."  Dunaway v. Webster, 519 F. Supp. 1059, 1083 (N.D. Cal. 1981).  Yet that same opinion explained that an "agency may withhold material found in documents which are in any way responsive to the request only if that material is clearly and without doubt unrelated to the subject of the request."  Id.  Here, the subject of Shapiro's request is the *entirety* of each document that mentions Mandela, even if such references are fleeting and tangential.  So compliance should involve virtually no guesswork:  A record is responsive if and only if it contains Mandela's name (or those of his three listed aliases) or any descriptor obviously referring to him.[2]

---

[2]  For example, if a document from 1998 referred simply to "the current President of South Africa," that record would "mention[]" Mandela, even if it did not use his name, because its allusion to him would be immediately apparent and unmistakable.

The CIA cites a number of FOIA requests that were held not to reasonably describe the records sought.  But in most of those cases, the reviewing agency's task was anything but ministerial.  In <u>Sack v. CIA</u>, 53 F. Supp. 3d 154 (D.D.C. 2014), for example, the plaintiff sought all "documents *pertaining* in whole or in part . . . to a list of closed Inspector General investigations and reports," <u>id.</u> at 163.  Because "a record may pertain to something without specifically mentioning it," the request's "lack of clarity le[ft] the agency to guess at the plaintiff's intent."  <u>Id.</u> at 164.  The CIA's filing system could not cure the overly subjective nature of the request, an agency affidavit explained, because "the CIA's record-keeping systems do not permit it to identify records that do not necessarily reference a document, but which may bear some relation to it."  <u>Id.</u> at 165.  FOIA requests seeking documents that "relate to" certain subjects have faltered for the same reason.  <u>See</u> <u>Freedom Watch, Inc. v. U.S. Dep't of State</u>, 925 F. Supp. 2d 55, 61 (D.D.C. 2013) (finding such a request "overbroad since life, like law, is 'a seamless web,' and all documents 'relate' to all others in some remote fashion" (quoting <u>Mass. Dep't of Health & Human Servs.</u>, 727 F. Supp. 35, 36 n.2 (D. Mass. 1989)).  Other examples abound.[3]  So when a defendant alleges that a FOIA request does not reasonably describe the records sought, there is a difference in kind between requests for documents that "mention" or "reference" a specified person or topic and those seeking records "pertaining to," "relating to," or "concerning" the same.  FOIA's reasonable-description requirement does not doom requests that

---

[3]  <u>See, e.g.</u>, <u>Freedom Watch v. CIA</u>, 895 F. Supp. 2d 221, 223, 229 (D.D.C. 2012) (a request for records "that refer or relate to the following [topics] in any way" was "vague" and "extraordinarily broad"); <u>Latham v. U.S. Dep't of Justice</u>, 658 F. Supp. 155, 161 (D.D.C. 2009) (a request for records "that pertain in any form or sort to [the plaintiff]" was "overly broad"); <u>Dale v. IRS</u>, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (a request for documents "that refer or relate in any way to [the plaintiff]" did not reasonably describe the records sought); <u>Hunt v. Commodity Futures Trading Comm'n</u>, 484 F. Supp. 47, 51 (D.D.C. 1979) (plaintiffs who requested records "concern[ing]" them ought to have "specif[ied] more carefully the information they were seeking"); <u>Fonda v. CIA</u>, 434 F. Supp. 498, 501 (D.D.C. 1977) ("Plaintiff offers no criterion by which defendants can determine which documents 'concern her.'").

*precisely* describe the records sought, even if compliance might overwhelm an agency's response team.

The CIA insists that Shapiro's request does not reasonably describe the relevant records because it would not "enable[] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." Dale v. IRS, 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (quoting Marks v. United States, 578 F.2d 261, 263 (9th Cir. 1978)). Stated in full, the objection seems to be that (1) the CIA likely possesses a tremendous number of documents mentioning Mandela; (2) locating them all would require the CIA to expend an unreasonable amount of effort; and (3) excessively burdensome requests, such as this one, necessarily fail to reasonably describe the records requested. As the CIA puts it, since "a mere mention [of Mandela] could appear incidentally in innumerable records," CIA's Reply Supp. Mot. Dismiss 3, "searches for responsive records would be extensive," CIA's Mot. Dismiss 7.

But as the D.C. Circuit has noted, "the number of records requested appears to be irrelevant to the determination of whether they have been 'reasonably described.'" Yeager, 678 F.2d at 326; see also id. (finding that a request to search over a million records "reasonably described" the records sought, since the agency "knew 'precisely' which of its records had been requested and the nature of the information sought from those records"). And this Court recently expressed "skeptic[ism] that a FOIA request may be denied based on [the] sheer volume of records requested." Tereshchuk, 67 F. Supp. 3d at 454–55. The statute itself "puts no restrictions on the quantity of records that may be sought." Id. at 455. Rather, it explicitly contemplates unusually large requests, affording reviewing agencies additional time "to search

for . . . a voluminous amount of separate and distinct records which are demanded in a single request."  5 U.S.C. § 552(a)(6)(B)(iii)(II).

Whether Shapiro's request would require the CIA to expend an unreasonable amount of effort cannot be determined from his request alone, "on its face."  CIA's Reply Supp. Mot. Dismiss 4.  Although an agency need not comply with unreasonably burdensome FOIA requests, it "bears the burden to 'provide [a] sufficient explanation as to why such a search would be unreasonably burdensome.'"  Ayuda, Inc. v. FTC, 70 F. Supp. 3d 247, 275 (D.D.C. 2014).  The required showing is "substantial," Tereshchuk, 67 F. Supp. 3d at 455—an agency must articulate its reasons for nondisclosure "with reasonably specific detail."  People for the Am. Way v. U.S. Dep't of Justice, 451 F. Supp. 2d 6, 13 (D.D.C. 2006).  Courts typically demand "a detailed explanation by the agency regarding the time and expense of a proposed search in order to assess its reasonableness."  Wolf v. CIA, 569 F. Supp. 2d 1, 9 (D.D.C. 2008).  In People for the American Way, for example, the defendant filed an affidavit explaining that compliance would require the agency to devote 25,000 hours to manually searching all 44,000 files encompassed in the request.  The Court held that the agency had "met its burden" of explaining why a search would be unreasonably burdensome.  451 F. Supp. 2d at 61; see also Wolf, 569 F. Supp. 2d at 9 (holding that the CIA had "met its burden" by submitting a declaration "averr[ing] that a researcher would be forced to review the reels on a frame-by-frame basis, which would take approximately 3675 hours and cost about $147,000"); Int'l Counsel Bureau v. U.S. Dep't of Defense, 723 F. Supp. 2d 54, 59 (D.D.C. 2010) (agreeing with the agency that "enlisting a full-time staff of twelve for a year to review hundreds of thousands of unsorted images would impose . . . an undue burden").

The CIA has done nothing of the sort here.  In fact, it has overtly declined to file such a declaration, simply asserting in its legal briefing that the documents Shapiro requests could not be "locate[d] . . . with a reasonable amount of effort."  CIA's Reply Supp. Mot. Dismiss 2, 4. Because the scope of Shapiro's request is clear, this is plainly an argument that a satisfactory response would be too burdensome.  But as the case law teaches, "[t]his Court will not find a search unduly burdensome on conclusory statements alone."  Hall v. CIA, 881 F. Supp. 2d 38, 53 (D.D.C. 2012).

The CIA worries that "[a]gency employees could not with certainty determine that an office, database, or archival file series does not contain a record that 'mentions' Mandela." CIA's Reply Supp. Mot. Dismiss 5.  FOIA does not require perfection, however.  "There is no requirement that an agency search every record system" in the face of likely futility.  Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  The CIA need only search "all files likely to contain responsive materials," id., not "virtually every file contained in [every] branch and division office[]," AFGE, Local 2782 v. U.S. Dep't of Commerce, 907 F.2d 203, 206 (D.C. Cir. 1990).  Because Shapiro's FOIA request to the CIA conveys exactly which records he seeks, and because the agency has not satisfactorily explained why processing the request would be unduly burdensome, the Court will deny the CIA's motion to dismiss.

      B.     The NSA's Motion for Summary Judgment and Shapiro's Cross-Motion

      i.     The Scope of Shapiro's FOIA Request

Before addressing the sufficiency of the NSA's Glomar response, the Court will resolve a preliminary disagreement as to what records were encompassed within Shapiro's request.  The NSA takes the position that Shapiro's request sought only "*intelligence records* on Mr. Mandela or records that would otherwise be used for an *intelligence* purpose."  NSA's Combined Reply

Supp. Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("NSA's Reply") 9 (emphases added).

Accordingly, the agency justified its <u>Glomar</u> response only with respect to such records.  The

NSA further accuses Shapiro of using his cross-motion for summary judgment to "seek[] a new

category of records"—"non-intelligence records that were not encompassed within Plaintiff's

original request."  <u>Id.</u> at 6.  Shapiro resists this interpretation, claiming that his original FOIA

request "states that he is broadly seeking any records 'mentioning' Nelson Mandela."  Pl.'s

Combined Opp'n NSA's Mot. Summ. J. and Cross-Mot. Summ. J. ("Pl.'s Opp'n") 2.

Shapiro has the better view.  The operative text of his request to the NSA, as

distinguished from any illustrative commentary included in the request, was identical to that

submitted to the CIA:  "I request disclosure of any and all records that were prepared, received,

transmitted, collected and/or maintained by the [agencies] mentioning the deceased individual

Rolihlahla Mandela (aka Nelson Mandela, aka Madiba, aka Tata)."  Compl. Ex. 3, at 1; Ex. 4, at

1.  As discussed above, this is plainly a request for "any and all" records in the NSA's possession

that "mention[]" Nelson Mandela or his three listed aliases.  The Court will assess the adequacy

of the NSA's <u>Glomar</u> response accordingly.

ii.     <u>The Sufficiency of the NSA's *Glomar* Response</u>

Recipients of FOIA requests "may refuse to confirm or deny the existence of records

where to answer the FOIA inquiry would cause harm cognizable under a[] FOIA exception."

<u>Wolf v. CIA</u>, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting <u>Gardels v. CIA</u>, 689 F.2d 1100, 1103

(D.C. Cir. 1982)).  The NSA maintains that the mere existence or nonexistence of records

responsive to Shapiro's FOIA request is itself shielded from disclosure under Exemptions One

and Three.

Exemption One protects records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The NSA points to "Classified National Security Information," Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), as authorizing its Glomar response here.

Exemption Three specifies that generally applicable FOIA obligations do not apply to information that is "specifically exempted from disclosure by [federal] statute," if that statute either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The NSA rounds out its belt-and-suspenders approach by citing three alleged statutory privileges. First, the National Security Agency Act of 1959 (as amended) provides that "nothing in this chapter or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof." 50 U.S.C. § 3605(a). Second, another federal statute criminalizes the unauthorized disclosure of any classified information "concerning the communication intelligence activities of the United States or any foreign government" or "obtained by the processes of communication intelligence from the communications of any foreign government, knowing the same to have been obtained by such processes." 18 U.S.C. § 798(a)(3)–(4). And third, the Director of National Intelligence is statutorily authorized to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1).

The NSA appended to its motion a declaration from David J. Sherman, the agency's Associate Director for Policy and Records. See Decl. of David J. Sherman, NSA's Mot. Summ.

J. Ex. 1 ("Sherman Decl.").  Sherman sought to illustrate the national-security stakes of even

confirming or denying that the NSA possesses intelligence-related records mentioning Mandela.

According to Sherman, the NSA gathers, scrutinizes, generates, and deploys "signals intelligence

('SIGINT') information . . . for (a) national foreign intelligence purposes, (b) counterintelligence

purposes, and (c) the support of military operations." Id. at 2.  Sherman avers that "the identity

of specific communications" and human "targets," and the agency's ability or inability to exploit

them, "must be maintained in strictest secrecy." Id. at 4.  After all, "[c]onfirmation by NSA that

a person's activities are not of foreign intelligence interest" or that the NSA has been either

successful or unsuccessful in monitoring their activities "would allow our adversaries to

accumulate information and draw conclusions about NSA's technical capabilities, sources, and

methods." Id. at 8.  In the aggregate, full responses in these situations would "provid[e] our

adversaries a road map that instructs them which communication modes or personnel remain safe

or are successfully defeating NSA's capabilities." Id. at 8–9.

   "[W]hen a Glomar response touches upon issues of national security"—as is the case

here—"courts must give agency decisions substantial deference," Competitive Enter. Inst. v.

NSA, 78 F. Supp. 3d 45, 53 (D.D.C. 2015), for judges "lack the expertise necessary to second-

guess such agency opinions in the typical national-security FOIA case," ACLU I, 628 F.3d at

619 (quoting Krikorian v. U.S. Dep't of State, 984 F.2d 461, 464 (D.C. Cir. 1993)).  As long as

the record reveals no bad faith on the agency's part and contains no contradictory evidence,

"summary judgment is warranted on the basis of the affidavit alone" when the agency affidavit

"describes the justifications for withholding the information with specific detail" and

"demonstrates that the information withheld logically falls within the claimed exemption." Id.

Courts must sustain an agency's Glomar response predicated on a FOIA exemption when the

justification for nondisclosure "appears 'logical' or 'plausible.'" <u>ACLU v. CIA</u>, 710 F.3d 422,

427 (D.C. Cir. 2013) ("<u>ACLU II</u>") (quoting <u>Wolf</u>, 473 F.3d at 374–75).

For part of Shapiro's FOIA request, that test is easily satisfied.  The Court must accord

substantial weight to the Sherman Declaration, which provides "specific detail" for why the

information withheld—whether the NSA possesses intelligence-related records mentioning

Mandela—"logically falls within the claimed exemption." <u>ACLU I</u>, 628 F.3d at 619.  The

NSA's reply brief clarifies that its <u>Glomar</u> response encompasses all records that "reveal whether

or not Nelson Mandela was a SIGINT target and/or of SIGINT interest to the NSA."  NSA's

Reply 10.  The NSA has interpreted Shapiro's FOIA request as seeking precisely these sorts of

records—no more, no less.  Importantly, as to records revealing whether Mandela was a SIGINT

target or of SIGINT interest to the NSA, Shapiro makes no effort to refute the applicability of

either of the agency's asserted FOIA exemptions.  Nor has he contradicted any of the Sherman

Declaration's averments or alleged bad faith on the part of the NSA.  The Court thus concludes,

based on information provided in the Sherman Declaration, that confirming or denying whether

Mandela was a SIGINT target or of SIGINT interest to the NSA would disclose "information

with respect to the activities" of the NSA, in violation of 50 U.S.C. § 3605(a).[4]  So with respect

to records revealing whether Mandela was a SIGINT target or otherwise of SIGINT interest to

the NSA, the agency's <u>Glomar</u> response suffices.

But Shapiro's request was not so cabined.  He explicitly sought "any and all records . . .

mentioning" Mandela.  Compl. Ex. 4, at 1.  Likely anticipating the Court's interpretation today,

the NSA expressed its "willing[ness] . . . to address" a hypothetical FOIA request "seeking non-

intelligence records" that mention Mandela, even "without the need for Plaintiff to file a new

---

[4]  It is therefore unnecessary to address the NSA's three other suggested bases for the
applicability of Exemptions One and Three.

FOIA request."  NSA's Reply 9 n.6.  Because the agency misinterpreted Shapiro's original

request, the Court finds that the NSA is statutorily obligated to address his outstanding request

for all records in the NSA's possession that do *not* reveal whether Nelson Mandela was a

SIGINT target or of SIGINT interest to the NSA.

iii.    <u>Whether the NSA Has Already Acknowledged the Information<br>Subject to Its *Glomar* Response</u>

Finally, Shapiro argues that the NSA's <u>Glomar</u> response—as far as it went—was

improper because the agency has already "officially acknowledged the existence of responsive

records": ones "demonstrat[ing] . . . the NSA's foreign intelligence interest in Mr. Mandela."

Pl.'s Opp'n 10–11.  Upon review of these documents, the Court disagrees.  It will therefore grant

in part the NSA's motion for summary judgment and deny Shapiro's cross-motion.

Shapiro is correct that an agency may not invoke a FOIA exemption when it has already

"ma[de] an 'official and documented' disclosure of the information being sought."  <u>Frugone v.

CIA</u>, 169 F.3d 772, 774 (D.C. Cir. 1999) (quoting <u>Fitzgibbon v. CIA</u>, 911 F.2d 755, 765 (D.C.

Cir. 1990)).  Critically, "[p]rior disclosure of similar information does not suffice; instead, the

*specific* information sought by the plaintiff must already be in the public domain by official

disclosure."  <u>Wolf</u>, 473 F.3d at 378; <u>see also</u> <u>Pub. Citizen v. U.S. Dep't of State</u>, 11 F.3d 198,

201 (D.C. Cir. 1993) (explaining that the information already officially acknowledged must

"duplicate[] that being withheld").  To overcome the NSA's <u>Glomar</u> response, then, Shapiro

must demonstrate that "the agency[5] has already disclosed the fact of the existence (or

nonexistence) of responsive records"—here, whether Nelson Mandela was a SIGINT target or of

SIGINT interest to the NSA.  <u>ACLU II</u>, 710 F.3d at 427.  This is a "high hurdle . . . to clear," but

---

[5]  The "official acknowledgment" principle also applies where past disclosures have been "made
by an authorized representative of the agency's parent" entity, but not by "another, unrelated
agency."  <u>ACLU II</u>, 710 F.3d at 429 n.7.

the agency's "vital interest in [protecting] information relating to national security and foreign

affairs dictates that it must be." Pub. Citizen, 11 F.3d at 203.

Shapiro cites (and attaches) six sets of previously released documents that, "[t]aken

collectively," he says, "demonstrate that acknowledging the NSA's foreign intelligence interest

in Mr. Mandela would not reveal anything that has not already been revealed," Pl.'s Reply 10:

(1) documents released by the Department of Defense as part of this FOIA suit, including "memoranda sent to the director of the [NSA] describing in some detail Mr. Mandela's activities," Pl.'s Reply 7; id. Ex. 1;

(2) the Intellipedia entry for Mandela, released by the Office of Naval Intelligence in response to another of Shapiro's FOIA requests, Pl.'s Reply 8; id. Ex. 2;

(3) "a document posted on the NSA's own website contain[ing] a brief synopsis of a meeting between Mr. Mandela and then-South African President de Klerk," Pl.'s Reply 8;

(4) "numerous 'National Intelligence Daily' documents discussing Mandela," which "bear[] the seal of the National Security Agency," Id.; id. Exs. 3–9;

(5) "a Special National Intelligence Estimate . . . prepared by the CIA with contributions from the NSA," which "reveals extensive interest in Mandela by the United States intelligence community," Pl.'s Reply 9; id. Ex. 10; and

(6) an official "history of the Joint Chiefs of Staff . . . demonstrat[ing] United States intelligence agencies' surveillance of the South African government," Pl.'s Reply 10; id. Ex. 11.

These documents may well demonstrate that the NSA was, at some level, "interested"

in Nelson Mandela's activities as a prominent dissident and high-ranking political leader.

But they do not divulge whether the NSA "has or has not targeted Nelson Mandela or

considered him to be of SIGINT interest." NSA's Reply 11. Shapiro "bears the burden" of

"establish[ing]," Pub. Citizen, 11 F.3d at 201, that these documents' references to Mandela

necessarily mean that the NSA, at some point, "exploit[ed] foreign electromagnetic signals"

in an effort to intercept communications sent to or from, or regarding, Nelson Mandela,

Sherman Decl. 2.  Although the Court will not undertake here to analyze each of the scores of Mandela references in Shapiro's exhibits, its own review of these documents failed to uncover a single mention of Mandela that seemingly could not have been generated without the NSA's SIGINT program.[6]

In sum, based on the previously disclosed documents Shapiro has adduced, the Court declines to hold that the precise fact of whether Nelson Mandela was a SIGINT target or otherwise of SIGINT interest has been officially acknowledged.  Neither the NSA nor a parent entity has "made admissions that would waive [the agency's] right to assert a Glomar response here."  Competitive Enter. Inst., 78 F. Supp. 3d at 57.

---

[6]  Most references to Mandela were fairly prosaic and reportorial.  See, e.g., Pl.'s Opp'n Ex. 1, at 12 ("South African President Mandela recently toured the Persian Gulf states in which South Africa has recently opened diplomatic missions."); id. Ex. 6, at 2 ("A poll of white South Africans last month indicates that whites' esteem for Mandela has decreased since his release from prison."); id. Ex. 8, at 3 ("Mandela heads for Europe tomorrow to visit France, the UK, West Germany, Italy, Belgium, Ireland, and Switzerland.").  Those containing some element of assessment or prediction were not self-evidently facilitated by the NSA's SIGINT program.  See, e.g., id. Ex. 10, at 12 ("[G]iven the immense domestic and international popularity of Mandela, he poses a real threat to the government and it is unlikely, in our judgment, that he will be released over the next two years.").

**IV.     Conclusion**

For the foregoing reasons, the Court will deny the CIA's motion to dismiss, grant in part

the NSA's motion for summary judgment, and deny Shapiro's cross-motion for summary

judgment.[7]  A separate Order accompanies this Memorandum Opinion.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   March 17, 2016

---

[7]  Because neither the CIA nor the NSA has begun processing Shapiro's request, the Court need not address his other allegations—that those agencies violated FOIA by failing to grant his requests for expedited processing and a fee waiver.  Compl. ¶¶ 54, 57.