# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**RYAN NOAH SHAPIRO,**

    Plaintiff,

    v.

**CENTRAL INTELLIGENCE AGENCY, et. al.,**

    Defendants.

Case No. 1:14-CV-00019 (CRC)

## MEMORANDUM OPINION

Plaintiff Ryan Shapiro filed Freedom of Information Act requests with the Central Intelligence Agency, the National Security Agency, the Department of Defense's Defense Intelligence Agency, and the Federal Bureau of Investigation seeking any document that mentions or references former South African President Nelson Mandela, and later filed suit to compel compliance with his requests. Three of the agencies are still in the process of reviewing and releasing responsive records, but the FBI completed its production and moved to dismiss Shapiro's complaint or, alternatively, for summary judgment. The Court ruled on the motion, as well as Shapiro's cross-motion for summary judgment, earlier this year. See Shapiro v. Cent. Intelligence Agency, 2017 WL 1216505, at *1 (D.D.C. Mar. 31, 2017).

The Court rejected most of Shapiro's numerous objections to the FBI's withholdings, but two issues remained unresolved. First, the Court reserved judgment on the FBI's application of Exemption 5—which covers pre-decisional documents that are part of the agency's deliberative process—to withhold a draft operations plan for a U.S. delegation's attendance at President Mandela's funeral. See id. at *3–4. Accordingly, it ordered the FBI to submit an unredacted version of that plan for the Court's *in camera* review. See March 31, 2017 Order, ECF No. 80. Second, the Court denied both parties' motions with respect to the FBI's determination of what

constitutes a responsive record because "[w]ithout further details in the record about how the FBI determined which pages within these documents were responsive, the Court [was] unable to resolve this issue." Shapiro, 2017 WL 1216505, at *12. The Court invited the FBI to either release the pages identified by Shapiro as responsive to his request or renew its motion for summary judgment by filing a supplemental declaration explaining how it made these determinations. See March 31, 2017 Order, ECF No. 80. Upon studying the FBI's *ex parte* filing and its supplemental declarations, and for the reasons discussed below, the Court is convinced that the FBI has successfully discharged its FOIA obligations and will grant summary judgment in its favor.[1]

Exemption 5 covers "inter-agency or intra-agency memorandums[,]" 5 U.S.C. § 522(b)(5), that are both "pre-decisional" and "deliberative." Shapiro, 2017 WL 1216505, at *3 (quoting Tax Analysts v. IRS, 117 F.3d 607, 616 (D.C. Cir. 1997)). In its earlier ruling, the Court was unable to determine if a "ten-page draft Operations Plan concerning preparations for sending a U.S. delegation to South Africa for former President Mandela's funeral" was properly withheld because it was unclear if this plan was merely "logistical" or included the type of "conclusions, recommendations, or opinions" that Exemption 5 was intended to protect. Id. Now, having reviewed the document for itself, the Court finds it was properly withheld under Exemption 5: The plan was distributed between agencies; it was a pre-decisional draft that was "recommendatory in nature" and could not have become final without additional inputs; and it was part of the "give-and-take of the consultative process" that occurs between governmental agencies when preparing for an

---

[1] In its Memorandum Opinion, the Court also ordered the FBI to release other potentially responsive information withheld under Exemptions 7(C) and 7(E) or to submit a supplemental declaration justifying its position. The FBI apparently released pages Mandela 1216-1217 in response to the Court's ruling and invoked Exemption 7(D) as an alternative basis for withholding the remaining information. See Pl.'s Opp'n to Def.'s Renewed Mot. Summ. J. ("Pl.'s Opp'n") 1 n.1. Shapiro no longer challenges those additional withholdings. See id.

international event with potential security threats.  Hooker v. U.S. Dep't of Health & Human Servs., 887 F. Supp. 2d 40, 56 (D.D.C. 2012), aff'd by 2014 WL 3014213 (D.C. Cir. May 13, 2014).  And while the plan does include some factual material, "[t]he choice of what factual material . . . to include or remove during the drafting process" appears to have been "part of the [FBI's] deliberative process, and thus is properly exempt under Exemption 5."  Id. (citing ViroPharma Inc. v. Dep't of Health and Human Servs., 839 F. Supp. 2d 184, 193 (D.D.C. 2012)).

The final loose end concerns Shapiro's challenges to the FBI's non-responsiveness determinations.  The crux of Shapiro's argument was this:  once the FBI locates a reference to the subject of a FOIA inquiry in a document or file—no matter the type of document or its size—the agency must release the entire document because it constitutes a single responsive record.  Specifically, Shapiro pointed to the FBI's release of non-consecutive pages within a larger document, arguing that he was entitled to all pages between those released pages, which he refers to as "the missing pages."  The FBI disagreed, relying on the agency's longstanding practice of locating responsive pages within an off-topic "cross-reference" file and providing additional pages as needed for context without releasing the document as a whole.  The Court found that the "FBI's practice is consistent with the D.C. Circuit's guidance[,]" which permitted agencies to use their own definitions of a responsive record, subject to certain limitations.  Shapiro, 2017 WL 1216505, at *11.  In addition, it set forth a standard, reproduced below, for reviewing such responsiveness determinations:

> The burden will first rest with the agency to justify its actions when singling out a responsive record from a greater compilation of documents.  If satisfactory, the agency's explanation will merit a presumption of good faith.  The requester, however, remains free to challenge the agency's explanation by offering evidence of positive indicia that the responsive material was inappropriately withheld or of bad faith on the part of the agency.  The agency will then have an opportunity to respond to the requester's allegations, and the Court will review their arguments on the merits.

3

Shapiro, 2017 WL 1216505, at *12. The Court requested more information from the FBI about its responsiveness determinations here because the record lacked the necessary level of detail to permit effective review of the agency's actions.

In renewing its motion for summary judgment, the FBI offers two new declarations from Records Management Division Section Chief David M. Hardy that detail the agency's responsiveness determination process. Mr. Hardy explains that the FBI treats main files differently from cross-references for the purposes of defining a responsive record. Fifth Decl. of David M. Hardy ("Fifth Hardy Decl.") ¶ 10. If, for example, the subject of a FOIA request is also "indexed as a main subject of an investigative file[,]" then all of the pages within the file are considered *responsive* and processed accordingly. Id. By contrast, if "Nelson Mandela" (the subject of Shapiro's FOIA request) is simply indexed to a cross-reference within another subject's main file, then "only the cross-reference [is] reviewed to locate the mention of Nelson Mandela in the documents, and then only the specific pages he is mentioned on" are considered responsive records. Id. Each page that mentions Nelson Mandela is considered an independent, responsive record for the purposes of FOIA. See id. Those pages, along with any additional pages that help provide context for the specific references, are processed for release. See id. at ¶ 8. The FBI created this distinction between main files and cross-references because cross-references often contain a high volume of largely irrelevant information and documents. See id.

Mr. Hardy explains that when the FBI reviewed Shapiro's request and searched for responsive records, it located specific mentions of Mandela's name in cross-references. The FBI found the specific pages with those references and only processed those pages that "contained information about the subject of the FOIA request (contextual or concrete)." Id. at ¶ 10. This resulted in non-consecutive pages being released to Shapiro. In other words, "the missing pages" Shapiro seeks neither mention Nelson Mandela nor put the relevant pages in context, and therefore

4

fall outside the scope of his FOIA request. Because the FBI applied its longstanding and reasonable practice of distinguishing main files and cross-references for responsiveness determinations, the Court finds that the practice "merit[s] a presumption of good faith."

Shapiro criticizes the FBI's practice of using pages—rather than "serials"—as the "basic unit" for defining a responsive record. See Pl.'s Opp'n 3. Serials are a sub-component of a case file and can be composed of multiple documents regarding multiple subjects. See Fifth Hardy Decl. ¶¶ 7, 11. Shapiro points to deposition testimony from FBI officials in previous FOIA litigation and FBI training materials as evidence that a serial is generally thought of as a single document in a file. Pl.'s Opp'n 3 (citing Exs. A–D). He thus argues that any serial containing references to Mandela should have been marked responsive and released in its entirety. The FBI responds that the evidence offered by Shapiro is not fully representative of its recordkeeping practices because the deponents in the prior cases were discussing specific investigative files not at issue here. See Fifth Hardy Decl. ¶ 11. Furthermore, the explanations they offer are not at odds with how Mr. Hardy has explained the FBI's process: a serial could be a *single* document, but it also could be many documents covering different topics. See Fifth Hardy Decl. ¶ 11 ("A serial can be a single document, but it can also be multiple documents, just as each document may contain numerous records or pages."). That is why the FBI concluded that pages and not serials were the most appropriate unit for defining a record. And it is not Shapiro's place to dictate how an agency should manage or define its records as long as its actions are reasonable and supported by the record. Therefore, Shapiro has failed to offer evidence of bad faith and the Court will uphold the FBI's responsiveness determinations here.

For the foregoing reasons, the Court will grant the FBI's motion for summary judgment. A separate Order accompanies this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>August 8, 2017</u>